**Loy A. JENNINGS, Appellant (Defendant),**

v.

**Robert D. JENNINGS, Appellee (Plaintiff).**

**No. 89–107.**

Supreme Court of Wyoming.

Nov. 29, 1989.

Richard M. Davis, Jr. of Burgess & Davis, Sheridan, for appellant.

Charles R. Hart, Sheridan, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant, Loy A. Jennings, seeks child support from appellee, Robert D. Jennings, for a child who has reached the age of majority. The district court denied her petition for modification of the divorce decree. She identifies the issue as:

"The sole issue before the Court is whether the District Court erred in finding that it lacked jurisdiction to enter an Order providing for support for a minor child in a divorce action after that child attained the age of majority."

Appellee identifies the issue as:

"[W]hether the District Court erred in finding that it lacked jurisdiction to enter an Order providing support for a non-disabled adult child based upon a post di-

vorce modification petition filed after the child attained the age of majority."

We affirm.

## FACTS

Robert and Loy Jennings were divorced on April 6, 1987. Under the divorce settlement, Loy obtained custody of the couple's two children, and Robert was required to pay child support for each child until that child became emancipated. The parties' agreement, which was incorporated into the final divorce decree, defined emancipation as occurring when a child either reaches the age of 19, marries, dies or enters into the United States armed forces. Wyoming law recognizes emancipation when a person reaches the age of 19, marries, or enters the United States military. Additionally, a 17–year–old minor may apply for emancipation provided he is willingly living separate and apart from his parents with at least his parents' acquiescence, is managing his own financial affairs, and has a legal means of income. See W.S. 14–1–101 through –206.

During August 1988, the Fourth Judicial District Court of Wyoming placed Christopher, the child whose support is at issue here, on probation after a guilty plea to a criminal charge. Christopher had been charged as an adult. The terms of Christopher's probation required that he live with his mother. On October 28, 1988, he attained the age of 19 years.

During November 1988, Robert petitioned the district court to modify the divorce decree to terminate his child support obligations. Christopher's attainment of age 19, in part, prompted the petition. Loy counter-petitioned for modification of the divorce decree extending Robert's child support obligations for Christopher during the time Christopher remained on probation and lived with Loy. The district court denied Loy's petition, noting that Robert had no legal obligation to support his son beyond age 19 years.

## DISCUSSION

■ W.S. 20–2–113(a) (1988 Cum.Supp.) gave a district court continuing jurisdiction over matters involving child custody and support arising out of divorce by providing in pertinent part as follows:

"In granting a divorce * * * the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children. * * * On petition of either of the parents, the court may revise the decree concerning the care, custody, visitation and maintenance of the children * * *."

The legislature revised this statute in 1989 to clarify this continuing jurisdiction. See W.S. 20–2–113. In *Kamp v. Kamp*, 640 P.2d 48 (Wyo.1982), we held that the language of this statute did not necessarily limit its applicability to minor children of divorced parents. 640 P.2d at 50–51.

The *Kamp* case concerned the obligation of a divorced father to provide support for a child so severely disabled that she required around-the-clock attention. *Id.* at 49. The child in *Kamp* suffered from severe mental deficiencies, cerebral palsy, and spastic paraplegia and was beyond the age of majority when the question arose. We held that the child fell "within the category of 'children' with respect to whom the legislature intended the divorced parent would be called upon to support." *Id.* at 51.

Although we held in *Kamp* that W.S. 20–2–113(a) had broad application, we noted as well that its reach was not without limit. The circumstances in *Kamp* did not require us to determine that limit. 640 P.2d at 51. Without disturbing the premise that "[t]he obligation to support such a child ceases only when the necessity for support ceases," *id.*, we hold that the factual circumstances of this case fall beyond the limit where a parent is required to support a child.

■ In the instant case, appellant and appellee agreed in their settlement that emancipation would terminate appellee's child support obligation. Such provisions are frequently found in divorce settlements, and their validity, here and in general, is beyond question. See *Broyles v. Broyles*, 711 P.2d 1119, 1126 (Wyo.1985).

The divorce decree incorporated this settlement agreement. When a decree incorporates a settlement agreement, we are reluctant to disturb the decree because doing so would infringe upon the freedom of contract, as well as concerns of finality. *Parry v. Parry*, 766 P.2d 1168, 1170 (Wyo. 1989). Therefore, when a decree for termination of support upon attaining the age of majority as provided in the parties' incorporated agreement is entered, the obligation to support terminates upon the date the age of majority is attained, except that there is a duty of parental support of a child beyond the age of majority in the case of a physically or mentally disabled child because the continuing disability prevents such a child from becoming emancipated. *See Kamp*, 640 P.2d at 53 (Rooney, Justice, specially concurring). *See* Annotation, *Postmajority Disability as Reviving Parental Duty to Support Child*, 48 A.L. R.4th 919, 923 (1986).

In conclusion, appellant's reasons for allowing Christopher to live in her home, despite his attainment of the age of majority, are her own, and we laud her acceptance of a perceived moral duty as a parent. However, she was under no legal duty to provide a residence for Christopher. His living arrangement was a term of his probation imposed upon him as an adult. The court imposing Christopher's probation had no authority to require appellant to abide by its terms. She agreed to them of her own volition.

Affirmed.

URBIGKIT, J., files a specially concurring opinion.

URBIGKIT, Justice, specially concurring.

It is apparent from the text of the majority that this court now adopts from our earlier case of *Kamp v. Kamp*, 640 P.2d 48 (Wyo.1982) the special concurrence written by Justice Rooney and eschews the majority decision authored by Chief Justice Rose. I specially concur in present decision to deny the father's support obligation for his nineteen-year-old son by conclusion that on this subject judicial legislating should come to a present end. The legislature should urgently undertake to establish within this complex subject of parental responsibility for their children what that obligation should be for support and maintenance, if any, after their children have achieved the age of majority set by present law at nineteen.

Candidly, I find an equal if not greater obligation and opportunity for consecration of parental responsibility in this case to benefit the nineteen-year-old son as compared with the devotion and abiding affection related by the mother, Marguerite, for her daughter, Marlana, in *Kamp*.

I cannot accept the rather blase denial of parental obligation and opportunity for Christopher Jennings. This young man was clearly at the cross-roads of life and the trial court in criminal sentencing had already recognized in parole order how important completion of a high school education and his maintenance at the home of his parents might be for his future. At no time of parenting was the immediacy, difficulty and intensive challenge to be greater than at that time for Robert and Loy Jennings to their son Christopher.[1] For Christopher, the year of continued education required by his parole order commenced in

---

1. The record does not inform whether Christopher was sentenced under the deferred conviction process of W.S. 7–13–301 in order that good behavior and probation term compliance would save him being tagged a *FELON—A CONVICT*—a person who had lost many civil liberties including the right to vote, serve on a jury or own a firearm. Marlana Kamp could only be loved, maintained and protected. Christopher might be saved. When half of the American adult population becomes *felons* and *convicts* and that fact comes to be recognized by the remaining voters, perhaps the untainted legislators, the judiciary and even the decisional public will understand the permanent and pervasive scars of felony conviction and destroyed capacity and lost opportunity for societal contribution. *See* W.S. 6–10–106(a), which states that "[a] person convicted of a felony is incompetent to be an elector or juror or to hold any office of honor, trust or profit within this state, * * *." *See also* 18 U.S.C.A. app. §§ 1201 and 1202 (West 1985), federal Firearms Act.

August 1988 before he had achieved adulthood and would have ended in May or June of 1989. What now may be the status about which this litigation is continued is certainly not to be revealed in present appellate file.

What I see from *Kamp—Jennings* is total confusion that urgently seeks thoughtful legislative attention within its constitutional responsibility for the public well-being. The rules of responsibility of parents for their children should be set as a matter of statute and not ad hoc judicial reaction to individual cases. Now clouded and questioned are the general subjects of responsibility for post-majority advanced education, effectiveness of divorce separation agreements or decrees considering post-majority obligation to the litigants' children and the obligation, if any, of the parents following incapacitation of their children post-adulthood.

The text of academic reviews and annotation analyses broadly consider the scope of society's concern and the opportunity for legislative decision. It was said in 1987 that Wyoming was only one of four states lacking statutes relating to disabled adult children. Horan, *Postminority Support for College Education—A Legally Enforceable Obligation in Divorce Proceedings?*, 20 Fam.L.Q. 589, 589 n. 1 (1987). Comprehensive consideration can be additionally found in Washburn, *Post–Majority Support: Oh Dad, Poor Dad,* 44 Temp. L.Q. 319 (1971); Note, *Express Provision for Post–Majority Child Support in Dissolution Decree Is Valid By Operation of the Marriage Dissolution Act of 1973. In re Marriage of Melville,* 11 Wash.App. 879, 526 P.2d 1228 (1974), 10 Gonz.L.Rev. 933 (1975); and H. Clark, *Law of Domestic Relations* ch. 15 at 495 (1968). *See also* Annotation, *Parent's Obligation to Support Adult Child,* 1 A.L.R.2d 910 (1948 & 1985 Supp.); Annotation, *Responsibility of Noncustodial Divorced Parent to Pay For, Or Contribute To, Costs of Child's College Education,* 99 A.L.R.3d 322 (1980); and Annotation, *Post–Majority Disability as Reviving Parental Duty to Support Child,* 48 A.L.R.4th 919 (1986).

The special concurrence in *Kamp,* 640 P.2d at 52 quoted from the Iowa case of *Davis v. Davis,* 246 Iowa 262, 67 N.W.2d 566, 568 (1954):

"It is true, as respondent suggests, that generally at common law a parent's obligation to support his child ends when the latter becomes of age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for the support ceases. Courts throughout the land have so held emphatically and eloquently."

Rationally, in this world of 1989, it is absurd and perhaps almost criminal to believe that a nineteen-year-old without advanced education is realistically able "to care for [him]self upon obtaining majority" within this computer world or that the "necessity for the support ceases" for further education which is pursued by the young individual.

In this era of divorce, *Kamp—Jennings* will have a broad social affect and it is my conviction that Wyo. Const. art. 2, § 1 constitutes for the legislature a call to establish by an enacted statute where the limitations of enforceable responsibility of parents to their children should end. I would hope that the legislature would be constitutionally summoned to that task in order that this court does not continue to be responsible to substitute an ad hoc case-to-case adjudication.[2]

I specially concur on the basis that the legislature has provided, for me, no direction for enforceable parental obligation

---

**2.** The authorities also agree that the Viet Nam war motivated reduction in the age of majority to nineteen or, in some states, eighteen, and had, conversely, great detriment in problems relating to the young people of our society. We reduce the age of majority, but at the same time by economic and societal developments, delay the earliest age at which most young people can realistically expect to be economically emancipated. At least by the prior majority age of twenty-one, aspiring students were well underway in pursuing college education or technical training.

for support or maintenance of their children after the age of majority has been achieved, except within the small enclave this court has previously carved out in *Kamp.* The balancing of rights and responsibilities within the fundamental relationship of parent and child calls first for the legislature to regulate and define and then only for the judiciary to apply, differentiate with set standards and finally to enforce. See a discussion of these problems with the answers provided in *Griffin v. Griffin,* 384 Pa.Super. 188, 558 A.2d 75 (1989) and the cited scholastic reviews which provide both interesting thought and exciting challenge.[3]

**3.** *Griffin* casually notes another problem which deserves realistic attention by the legislature. What participation should the young, near-adult or adult child have in the litigative proceeding for their support and to whom should the payments be made? It may well be that surrogate litigating by the parents in the name of or for the benefit of the older child might providently be benefitted by direct litigation or at least participation by the person whose interests are most immediately involved.