D. Michael PAULING, Appellant
(Defendant),

v.

Tamara K. PAULING, Appellee
(Plaintiff).

No. 91–248.

Supreme Court of Wyoming.

Aug. 20, 1992.

Suzan C. Pauling of Schaefer and Associates, Laramie, for appellant.

Robert L. Nelson of Robert L. Nelson & Associates, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

MACY, Chief Justice.

Appellant D. Michael Pauling (the father) appeals from the lower court's order modifying his child support obligation.

We affirm in part and reverse in part.

The father offers the following issues on appeal:

I. Wyoming Statute § 20–6–306(a) is both unconstitutional and prejudicial as applied to Appellant's case.

II. The lower court's modification order requiring the Appellant to continue child support payments until minor child reached age of 21 was error.

III. The Appellant's obligation to pay excess medical expenses should be modified to permit Appellant to insure against that obligation and permit that insurance to be credited against computation of "net income" and guideline support amounts.

Appellee Tamara K. Pauling (the mother) adds another issue:

The Appellant's appeal is without merit and there is no good cause for the bringing of this appeal action, and Appell[ee] should be awarded her costs and expenses.

The father and the mother married in 1976 and had one child (the daughter). The parties subsequently divorced in June 1987. The divorce decree incorporated an executed property settlement and child custody agreement (the agreement). The agreement granted custody of the daughter to the mother and required the father to make child support payments of $300 per month.

On March 6, 1991, the mother filed a motion to modify the decree, alleging that a substantial change of circumstances had occurred after the court entered the divorce decree. The mother sought, among other things, an order requiring the father to pay child support payments in an amount suggested by the Wyoming child support guidelines because the father's income had increased by more than twenty percent.[1] *See* Wyo.Stat. §§ 20–6–301 to –306 (Supp.1992). The mother also sought an order requiring the father to carry medical insurance for the daughter and to pay the daughter's medical expenses not covered by insurance.

On April 29, 1991, the district court commissioner held a hearing on the mother's

---

* Chief Justice at time of oral argument

1. Wyo.Stat. § 20–6–306(a) (Supp.1992) actually requires a twenty percent change in the support amount, not a twenty percent change in the paying parent's income.

motion to modify the divorce decree. Evidence introduced during the hearing revealed that, at the time the divorce was granted in 1987, the father was earning only nominal wages as a summer legal intern. By 1991, the father's "net income," as defined in § 20–6–301(a)(ii), had risen substantially to $2,034.70 per month. The mother's monthly take-home pay in 1991 was $2,411 per month, plus she received an additional $500 per month from the father ($300 in regular support payments, $100 for accrued back support payments, and $100 for reimbursement of marital debts).

The district court commissioner also heard testimony concerning medical insurance for the daughter. At the time of the divorce, the father was working in a temporary summer job and did not have insurance readily available, whereas the mother was working in a hospital and could provide the daughter with coverage at a reasonable rate. Because the father did not have insurance available, the mother agreed to provide the daughter with insurance and has continued to provide such insurance. The parties did not make any provision in the agreement itself concerning who should provide the daughter with insurance coverage or who should pay the medical bills not covered by insurance. Insurance for the daughter became an issue in the modification action in part because the daughter had recently incurred significant medical expenses of which $23,500 were not covered by the mother's insurance policy. The mother assumed all liability for the $23,500. According to the mother,

the daughter will require further medical care.

After hearing all the evidence, the commissioner recommended that, pursuant to the child support guidelines, the father should pay $535 per month in child support payments until the daughter reached nineteen years of age, became married, or otherwise became emancipated. In his decision letter, the district judge agreed with the commissioner that $535 per month was the proper level of support. However, the judge ordered the father to make support payments until the daughter reached twenty-one years of age. The judge also ordered the mother to provide medical insurance for the daughter and the father to pay any medical expenses not covered by insurance.

I

The father contends that the district court improperly relied upon Wyo.Stat. § 20–6–306(a) (Supp.1990)[2] to increase his support obligation. More specifically, the father attacks § 20–6–306(a) as being violative of both the separation of powers provision found in Article 2, Section 1 and the contract clause found in Article 1, Section 35 of the Wyoming Constitution.

The father argues that § 20–6–306(a) violates the separation of powers provision because it usurps the courts' inherent judicial power to render binding judgments and to determine what constitutes a final judgment. The father points out that all issues determined in a divorce decree are final pursuant to the doctrine of *res judicata*

---

**2.** Section 20–6–306(a) provided in pertinent part:

(a) Any party, or the division of public assistance and social services in the case of child support orders being enforced by the child support enforcement section, may petition for a review and adjustment of any child support order that was entered more than thirty-six (36) months prior to the petition or which has not been adjusted within thirty-six (36) months from the date of filing of the petition for review and adjustment. The petition shall allege that, in applying the guidelines established by this article, the support amount will change by twenty percent (20%) or more per month from the amount of the existing order. The court shall require the

parents to complete a verified financial statement, and shall apply the guidelines set out in this article in conducting the review and adjustment. If, upon applying the guidelines to the circumstances of the parents or child at the time of the review, the court finds that the support amount would change by twenty percent (20%) or more per month from the amount of the existing order, the court shall consider there to be a change of circumstances sufficient to justify the modification of the support order.

Amended by 1991 Wyo.Sess.Laws ch. 161, § 3 effective April 1, 1991 ("department of family" was substituted for "division of public assistance and social" in the first sentence).

except in those instances when a party can establish a material or substantial change of circumstances. *Parry v. Parry,* 766 P.2d 1168, 1170 (Wyo.1989); *Manners v. Manners,* 706 P.2d 671, 674–75 (Wyo.1985). According to the father, prior to the enactment of § 20–6–306(a), courts, in determining whether a change of circumstances had occurred, considered the child's welfare, the paying parent's ability to pay, the recipient's spending habits, and all other surrounding circumstances; a mere increase in the paying parent's income was not sufficient. *Harrington v. Harrington,* 660 P.2d 356, 360 (Wyo.1983); *Mentock v. Mentock,* 638 P.2d 156, 158 (Wyo.1981). The father claims that the legislature's enactment of § 20–6–306(a) altered the prior case law and created a conclusive presumption that modification of support is warranted when application of the support guidelines to an existing support order would result in a twenty percent change in the monthly support level. The father considers this conclusive presumption to be an unconstitutional intrusion into the judiciary's power because the legislature is determining when a support order should be modified and this determination restrains the court's power to define the finality of its own judgments.

■ We consider the father's claim that § 20–6–306(a) is unconstitutional in light of the principle that "statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt." *Stephenson v. Mitchell ex rel. Workmen's Compensation Department,* 569 P.2d 95, 97 (Wyo.1977).

■ In this case, the father's argument that the legislature is unconstitutionally usurping the judiciary's power appears to stem from his erroneous assumption that § 20–6–306(a) *requires* a court to modify a parent's child support obligation upon finding that application of the guidelines would change the support amount by twenty percent or more per month from the amount in the existing order. Rather than requiring courts to modify existing support awards, § 20–6–306(a), in conjunction with §§ 20–6–304(a) and 20–6–302, created a rebuttable presumption that modification would be warranted when application of the guidelines would result in a twenty percent change in the monthly support award. The father interprets the guidelines as creating a rebuttable presumption only when child support is initially awarded, not when a support award is modified. This view is incorrect. Section 20–6–306(a) requires the court to apply § 20–6–304's guidelines when reviewing and adjusting an existing child support order. If application of § 20–6–304's guidelines would change the support amount by twenty percent or more, the court "shall consider there to be a change of circumstances sufficient to justify the modification of the support order." Section 20–6–306(a). The quoted language means that a twenty percent change in support constitutes a sufficient change in circumstances to modify an order; it does not mean that a court is obligated to modify the support order to conform to the guidelines. The guidelines are still only "rebuttably presumed to be the correct amount of child support to be awarded in any proceeding to ... modify ... child support amounts." Section 20–6–302(a). The court may deviate from the presumptively correct support level created by the guidelines when application of the guidelines would be unjust or inappropriate. To determine whether a particular level would be unjust or inappropriate, the court may consider a comprehensive list of factors enumerated in § 20–6–302(b).

Our conclusion that application of the guidelines to an existing support order does not require modification is reinforced by two recent opinions. *Hasty v. Hasty,* 828 P.2d 94 (Wyo.1992); *Roberts v. Roberts,* 816 P.2d 1293 (Wyo.1991). In *Roberts,* we said:

In seeking modification of an existing child support obligation, a party may petition the appropriate court to consider whether a change of circumstances exists sufficient to justify a modification of

the child support order. If, upon applying the guidelines of § 20–6–304 to the parties' circumstances at the time of review, the court finds the amount of child support payments would change by twenty percent or more per month from the amount under the existing order, "the court *shall* consider there to be a change of circumstances *sufficient to justify* the modification of the support order." Section 20–6–306(a) (emphasis added).

However, applying the guidelines established by § 20–6–304 when a party is seeking to modify an existing child support order, a court *may* deviate from the guidelines if it issues a finding on the record that application of the guidelines would be unjust or inappropriate in that particular case. Section 20–6–302(b). We agree with the district court's finding:

> "Child support agreements made prior to the enactment of the statutory child support guidelines (§ 20–6–301 through § 20–6–306 W.S.) do not necessarily have to be changed simply because of the enactment of the statutory guidelines."

816 P.2d at 1295–96 (emphasis in original).

■ Given the district court's discretion to deviate from the guidelines when determining whether modification of a support order would be proper, we fail to perceive how the legislature has usurped the judiciary's power to determine the finality of its judgments as claimed by the father. The enactment of § 20–6–306(a) has not obviated the court's need to consider those factors it previously considered when determining whether child support was warranted; i.e., the child's welfare, the paying parent's ability to pay, the recipient's spending habits, and all other surrounding circumstances. *Hasty*, 828 P.2d at 99.

In his second constitutional attack on § 20–6–306(a), the father claims that the statute violates the contract clause, Article 1, Section 35 of the Wyoming Constitution. The father contends that the law in effect at the time he entered into the agreement was impliedly incorporated into the agreement and that the law in effect at the time of his agreement was that child support could not be modified by merely establishing an increase in the noncustodial parent's income. Section 20–6–306(a), according to the father, altered the prior law so that a sufficient increase in the paying parent's income creates a conclusive presumption that modification is warranted. Apparently, the alleged impairment to the father's contract is that, after the enactment of § 20–6–306(a), he could no longer defend against a petition to modify his child support obligation which is made solely on the basis of an increase in his income.

Article 1, Section 35 of the Wyoming Constitution prohibits making any law which impairs contract obligations. Thus, for Article 1, Section 35 to be applicable, the allegedly improper law would have to impair a contract. In this case, the father assumes, without discussion, that the parties' settlement agreement retained its contractual nature despite being incorporated into the divorce decree. Whether the parties' pre-divorce settlement agreement survived the divorce decree as an independent contract depends upon whether the agreement merged into the divorce decree. Generally, the question of whether an agreement has merged into the divorce decree is significant because, once merged, the agreement loses its existence as a separately enforceable contract, thus limiting each party to judgment remedies and defenses and foreclosing any contract action. This case is somewhat unique because, if the parties' agreement merged into the divorce decree, the contract clause would be rendered inapplicable.

Unfortunately, like the law in many states, Wyoming's law is not entirely clear on the legal status of a settlement agreement after the divorce decree has been entered. *See, e.g., Hurd v. Nelson*, 714 P.2d 767 (Wyo.1986); *Oedekoven v. Oedekoven*, 538 P.2d 1292 (Wyo.1975); *Ulrich v. Ulrich*, 366 P.2d 999 (Wyo.1961); and *Finkbiner v. Finkbiner*, 340 F.2d 878 (10th Cir.1965). Courts in other jurisdictions have taken a variety of approaches to the question of when a settlement agreement

merges into a divorce decree. *See generally* Doris Del Tosto Brogan, *Divorce Settlement Agreements: The Problem of Merger or Incorporation and the Status of the Agreement in Relation to the Decree*, 67 Neb.L.Rev. 235 (1988). Some courts base their determination upon the language used; i.e., "incorporated" as opposed to "merged." Those agreements which are merely incorporated into the divorce decree survive as independent contracts, while those agreements which are merged cease to exist. *See Murphy v. Murphy*, 467 A.2d 129 (Del.Fam.Ct.1983). Other courts attempting to determine whether the agreement merged into the divorce decree have tried to discern the parties' intent from the language used or from the surrounding circumstances. *D'Huy v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289, 1292–93 (1990). These approaches have been criticized because parties often use language carelessly and the parties' intent may be difficult to discern. *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45, 51 (1978); Brogan, *supra* at 246.

■ In an effort to avoid the difficulty of determining the parties' intent while also providing a clear rule to guide the affairs of lawyers and lay people, Idaho has adopted a presumption approach to the question of merger. *Phillips v. Phillips*, 93 Idaho 384, 462 P.2d 49 (Idaho 1969). In *Phillips*, 462 P.2d 49 the Idaho Supreme Court held that a settlement agreement is presumed to merge into the divorce decree when, in the absence of clear and convincing evidence to the contrary, the parties enter into an agreement in contemplation of divorce and thereafter request the district court to approve, ratify, or confirm the agreement. *Id.* 462 P.2d at 52. In our view, the Idaho Supreme Court's approach is preferable because it allows parties to create agreements which will survive the divorce decree if they so desire and at the same time offers a simple and direct method of determining the status of an agreement which does not clearly state the parties' intent. Accordingly, we hold that, when, in the absence of clear and convincing evidence to the contrary, the parties enter into a settlement agreement in contemplation of divorce and the district court's divorce decree incorporates or adopts by reference that agreement, the agreement is presumed to merge into the decree and will no longer be given effect. Our decision does not affect a trial court's authority to revise a divorce decree concerning the care, custody, or maintenance of children or alimony, nor does our decision affect a trial court's lack of authority to modify a divorce decree concerning property division. *Paul v. Paul*, 631 P.2d 1060 (Wyo.1981); *Pavlica v. Pavlica*, 587 P.2d 639 (Wyo.1978) (per curiam).

■ In the present case, we discern no clear and convincing evidence from the record of the parties' intent to make their agreement survive the trial court's divorce decree. In the absence of such evidence, we presume that the agreement merged into the divorce decree and lost its contractual nature. The fact that the agreement ceased to exist as a contract upon entry of the divorce decree renders the father's contract clause claim inapplicable. *See Whitt v. Whitt*, 490 S.W.2d 159 (Tenn.1973).

## II

In his second issue, the father claims that the district court's modification order was in error because it required him to continue making child support payments until the daughter reached twenty-one years of age. We agree. The divorce decree provided:

> [T]he [father] shall pay the [mother] child support in the sum of $300.00 per month according to the terms of the Property Settlement and Child Custody Agreement entered into between the parties. That said payment shall be due [and] payable on the first day of each month and shall continue thereafter until said child reaches *majority*, marries, becomes self supporting or is otherwise emancipated.

(Emphasis added.) In contrast, the agreement provided: "The [father] shall pay to the [mother] the sum of Three Hundred Dollars ($300.00) per month as child support until said child reaches the age of

*Twenty one* (21) years." (Emphasis added.) The district court's modification order attempted to solve the discrepancy by requiring support payments until the daughter reached twenty-one years of age. The judge explained his solution in a decision letter, stating:

[A]s to the discrepancy between 19 years and 21 years of age, the language of the agreement should prevail because it is more specific. It is clear that the parties and Court intended the Decree to reflect the agreement and it should be considered to do so in spite of the appar[e]nt use of the term "majority" in the Decree rather than reference to the specific age of 21 as in the agreement. Therefore payments are due until age 21 or emancipation.

We cannot agree with the district court's approach. The decree stated that support payments were to be made until the daughter reached her majority (nineteen years of age)[3] or otherwise became emancipated. The record contains no explanation of why the court's decree required the father to continue making support payments until the daughter reached her majority rather than adopting the parties agreed-to termination date of twenty-one years. The discrepancy between the agreement and the decree may simply have been the result of inadvertence or mistake which occurred during the drafting of the decree. If the discrepancy were a mistake, the parties could have moved to correct the error pursuant to W.R.C.P. 60(b) within one year of the date of the judgment; however, neither party sought such relief. In any event, no matter what prompted the court to originally require support payments until the daughter's majority, we are now presented with the question of whether the court was authorized to modify the decree by extending support payments until the daughter reached twenty-one years of age.

Wyo.Stat. § 20–2–113(a) (Supp.1992) sets forth the district court's continuing jurisdiction to modify the father's child support obligations:

(a) In granting a divorce or annulment of a marriage, the court may make such disposition of the children as appears most expedient and beneficial for the well-being of the children.... Either parent may petition the court to enforce or revise the decree. The court has continuing subject matter and personal jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children require[ ].

In *Kamp v. Kamp,* 640 P.2d 48 (Wyo. 1982), and *Jennings v. Jennings,* 783 P.2d 178 (Wyo.1989), we analyzed the district court's authority to modify a decree to require the payment of child support past the child's age of majority as well as the extent of a parent's duty to provide support payments beyond the child's age of majority. The majority opinion in *Kamp* held that a parent has the duty to support his child whenever the need for support payments is necessary and that § 20–2–113(a) grants the district court jurisdiction to provide for child support payments notwithstanding the age of the child. 640 P.2d at 50–51. In a specially concurring opinion, Justice Rooney thought the majority defined a parent's duty to make support payments too broadly and concluded that a parent's obligation to support his child generally ceases when the child is emancipated, with the exception that, when the event triggering emancipation is reaching the age of majority, emancipation will not occur if the child is unable to maintain himself because of physical or mental deficiencies. Justice Rooney believed the court's jurisdiction to modify support payments was commensurate with the parent's duty to make support payments. *Id.* at 55.

This Court again considered the district court's authority to order post-majority support payments in *Jennings* when we held:

[W]hen a decree for termination of support upon attaining the age of majority as provided in the parties' incorporated

---

**3.** At the time the divorce decree was entered, Wyoming defined the age of majority as being nineteen years of age. Wyo.Stat. § 14–1–101 (Supp.1992).

agreement is entered, the obligation to support terminates upon the date the age of majority is attained, except that there is a duty of parental support of a child beyond the age of majority in the case of a physically or mentally disabled child because the continuing disability prevents such a child from becoming emancipated.

783 P.2d at 180.

■ By limiting a parent's duty to support his child beyond the age of majority to instances when the child is disabled, *Jennings* adopted the rule advocated by Justice Rooney in *Kamp*. *See Jennings*, 783 P.2d at 180–82 (Urbigkit, J., specially concurring). Applying the rule of *Jennings* and of *Kamp's* special concurrence to the present case, we conclude that the district court would have continuing jurisdiction to modify the decree by requiring child support payments to be made past the daughter's age of majority only if she were physically or mentally prevented from becoming emancipated. Since no evidence was introduced concerning the daughter's physical or mental inability to become emancipated, the district court was not authorized to extend the father's child support obligations.

### III

In its modification order, the district court required the mother to provide medical insurance for the daughter if coverage could be obtained through her employer or otherwise obtained at a reasonable cost. The district court ordered the father to pay the daughter's medical expenses which were not covered by the mother's insurance policy. The father now requests this Court to modify the district court's order to allow him to carry medical insurance for the daughter and to deduct the cost of providing such insurance from his "net income." The father's reduced net income would then qualify him for a lower child support obligation under the guidelines.

■ The father's first request, that we modify the lower court's order by permitting him to obtain insurance, is not really a request for modification. The district

court's order required the mother to insure the daughter and the father to pay all expenses not covered by insurance; the order did not prevent the father from obtaining insurance. If the father considers it necessary to purchase insurance for those expenses not covered by the mother's insurance policy, it is his prerogative to buy such insurance; he does not need our permission.

■ The father's second request is that we permit him to deduct the cost of insuring his daughter when calculating his net income and support obligation under the guidelines. Rather than seeking permission from this Court to deduct the cost of insurance, the father should direct his request to the district court. On repeated occasions, we have said that the determination of whether to modify a child support obligation rests largely with the district court and that this Court will not disturb that determination except upon a grave abuse of discretion or violation of some legal principle. *Hinckley v. Hinckley*, 812 P.2d 907 (Wyo.1991); *Esponda v. Esponda*, 796 P.2d 799 (Wyo.1990). Our role in child support modification cases is to prevent any abuse of discretion by the district court and to ensure compliance with the law, not to make modification decisions. If the father chooses to purchase insurance, the district court is the one which is best able to determine the actual cost of the insurance, whether it is deductible as "dependent health care coverage for all dependent children" pursuant to § 20–6–301(a)(ii)'s net income definition, and whether any reduction in the father's net income should likewise reduce his child support obligation. For this Court to make these decisions would invade the province of the district court.

### IV

■ Finally, the mother contends that the father's appeal is without merit and that attorney fees and costs should be assessed against the father pursuant to W.R.A.P. 10.05. W.R.A.P. 10.05 allows an appellee to recover certain costs when the

judgment or order is affirmed. Our partial reversal of the lower court's order makes it unnecessary for us to address the mother's contention that she is entitled to attorney fees and costs pursuant to W.R.A.P. 10.05.

Affirmed in part and reversed in part.