2009 WY 5

**Thomas WITOWSKI, Appellant (Defendant),**

v.

**Gayle (Witowski) ROOSEVELT, Appellee (Plaintiff).**

No. S–08–0074.

Supreme Court of Wyoming.

Jan. 22, 2009.

Representing Appellant: Robert E. Schroth of Schroth & Schroth, LLC, Jackson, Wyoming.

Representing Appellee: David G. Lewis, Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] The district court entered a series of orders enforcing a Virginia divorce decree by holding Thomas Witowski (Father) responsible to Gayle (Witowski) Roosevelt (Mother) for child support and one-half of their daughter's (Child) education and medical expenses. On appeal, Father maintains that the district court should not have given full faith and credit to the Virginia decree, should have modified the decree to terminate his child support obligation once Child reached the age of majority, and abused its discretion by considering Mother's evidence of Child's medical and education expenses and granting judgment in her favor based upon that evidence. We affirm.

## ISSUES

[¶ 2] The issues on appeal are:

1. Whether the district court erred by giving full faith and credit to the Virginia divorce decree.

2. Whether the district court abused its discretion by denying Father's motion to modify the child support provision of the divorce decree.

3. Whether the district court abused its discretion by allowing Mother to introduce, at the December 12, 2005, hearing, evidence of some of Child's medical and education expenses that she did not timely provide to Father in discovery.

4. Whether the district court abused its discretion by admitting Mother's evidence at the October 8, 2007, hearing and awarding her reimbursement for additional education expenses.

## FACTS

[¶ 3] The parties married in 1973, and Child was born in 1984. A Virginia court granted the parties a divorce on August 24, 1992. The divorce decree incorporated the parties' separation agreement which stated, in relevant part:

3. Child Support:

Husband shall pay to Wife the sum of Six Hundred Dollars ($600.00) per month, for the support and maintenance of the minor child, ... payable on the first day of each month, commencing the first day of June 1992, ... and continuing in a like sum until the minor child reaches the age of 18 years or completes high school, whichever event shall last occur, and/or while the child is a full-time college student until age 23 years.

. . . .

5. College Education of Child:

Husband and Wife shall each pay one-half of the expenses of said child's college education which shall include costs of books, tuition, lodging, meals, and related fees, provided that the limit of each party's liability for each academic year involved shall be one-half of the charge or suggested costs for that same academic year as set out in the then published catalogue of the University of Virginia.

. . . .

8. Medical, Dental, Hospitalization Expenses:

Husband shall provide military/Champus health, hospitalization and dental coverage for Wife, until such time as a final Decree of Divorce is entered and for the child until his obligation to support and educate the child has terminated. Husband will obtain and maintain a Champus supplement insurance (health) policy for said child during the same period of time and each party will pay half of all future and necessary medical and dental expenses for treatment, examination and/or care of child not covered by Champus or provided by military facilities and/or insurance.

[¶ 4] After the divorce, Mother and Child relocated to Teton County, Wyoming, and Father moved to Colorado. Father complied with his obligations under the decree until June of 2002, after Child graduated from high school. Child then attended the University of Wyoming as a full-time student.

[¶ 5] Mother filed a complaint on October 27, 2004, seeking unpaid child support and attorney fees and costs. She subsequently amended her complaint to include a claim for reimbursement of one-half of Child's medical and education costs.

[¶ 6] The district court granted Mother a partial summary judgment on October 24, 2005. The district court concluded the Virginia decree was entitled to full faith and credit and clearly obligated Father to fulfill his monetary duties until Child attained her 23rd birthday, so long as she remained a full-time college student. The district court ruled that the precise amount Father owed for child support, medical and education costs, and Mother's attorney fees would be determined at a later date.

[¶ 7] Father subsequently filed a Petition to Modify Child Support, asking the district court to terminate his child support obligation. He claimed there had been a substantial change in circumstances to justify modification because Child was in college, no longer lived at home with Mother and her college expenses were otherwise provided for under the decree.

[¶ 8] The district court held a trial on December 12, 2005, to consider the outstanding issues and subsequently issued an "Order Granting [Mother] Further Partial Summary Judgment." In that order, the district court denied Father's petition to modify his child support obligation and entered judgment against him for the child support arrearage. The district court also ordered Father to pay $7,990.51 to cover his share of Child's education and medical costs. The district court ordered the parties to submit written arguments on some issues surrounding other reimbursable costs.

[¶ 9] Before the district court could consider the outstanding issues, Father appealed. This Court dismissed his appeal because the district court's orders did not fully dispose of the action and, consequently, did not comprise final appealable orders. *Witowski*

*v. Roosevelt,* 2007 WY 70, ¶ 12, 156 P.3d 1001, 1004 (Wyo.2007) (*Witowski I* ).

[¶ 10] Back in the district court, Mother filed a list of further medical and education expenditures for Child, together with associated credit card statements and cancelled checks. The district court held another evidentiary hearing and entered a "Final Summary Judgment" in favor of Mother. Father, once again, appealed.[1]

## STANDARD OF REVIEW

[¶ 11] The district court titled all of its orders "summary judgments." It appears its first order, where it ruled as a matter of law that the Virginia decree was entitled to full faith and credit and clearly required father to pay child support and other expenses until Child reached 23 years old so long as she was a full-time college student, was a true summary judgment. The district court's subsequent rulings were, however, made after evidentiary hearings. Therefore, they were not true summary judgments.

■ [¶ 12] W.R.C.P. 56(c) governs summary judgments:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A district court's summary judgment ruling is reviewed *de novo,* using the same materials and following the same standards as the district court. *Metz v. Laramie County Sch. Dist. No. 1,* 2007 WY 166, ¶ 17, 173 P.3d 334, 339 (Wyo.2007); *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

■ [¶ 13] The district court's other rulings were made in the context of contested hearings on child support and related issues. Those matters are generally left to the sound discretion of the district court. We reverse a

district court's ruling only if it amounts to an abuse of discretion.

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' "

*Pahl v. Pahl,* 2004 WY 40, ¶ 6, 87 P.3d 1250, 1252 (Wyo.2004). "We have additionally explained that 'judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Id.* at 1253 (quoting *Ekberg v. Sharp,* 2003 WY 123, ¶ 9, 76 P.3d 1250, 1253 (Wyo.2003)).

*Bingham v. Bingham,* 2007 WY 145, ¶ 10, 167 P.3d 14, 17 (Wyo.2007) (some citations omitted).

■ [¶ 14] Admission of evidence is within the trial court's sound discretion. We will not disturb the district court's evidentiary rulings absent a clear abuse of discretion. *Carroll v. Bergen,* 2002 WY 166, ¶ 19, 57 P.3d 1209, 1216 (Wyo.2002); *Garnick v. Teton County Sch. Dist. No. 1,* 2002 WY 18, ¶ 13, 39 P.3d 1034, 1040–41 (Wyo.2002). Rulings on issues of law, however, are reviewed *de novo. Plymale v. Donnelly,* 2007 WY 77, ¶ 21, 157 P.3d 933, 938 (Wyo.2007); *Seherr–Thoss v. Seherr–Thoss,* 2006 WY 111, ¶ 11, 141 P.3d 705, 712 (Wyo.2006).

---

1. At the time Father appealed, the attorney fees issue remained undecided. We have jurisdiction to decide the issues presented here because entry of a final judgment and the time for appeal is not necessarily delayed by an outstanding motion for attorney fees. *See Nish v. Schaefer,* 2006 WY 85, ¶ 23, 138 P.3d 1134, 1142–43 (Wyo.2006).

## DISCUSSION

### 1. Full Faith and Credit to Virginia Divorce Decree

[¶ 15] The district court ruled that the parties' Virginia divorce decree was entitled to full faith and credit. *See* U.S. Const. Art. 4, § 1. The parties focus on the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B, as the paradigm for enforcing the child support order.[2] That statute provides, in relevant part:

(a) General rule.—The appropriate authorities of each State—

(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State[.]

*Id.*

[¶ 16] Father argues first that the district court erred by enforcing the child support provisions of the Virginia decree under the Full Faith and Credit Clause because it was a modifiable order, and not a final judgment. The Virginia decree provided:

It is further ADJUDGED, ORDERED, and DECREED that, pursuant to Virginia Code Section 20–79(c), all further matters pertaining to child custody, visitation and support are hereby transferred to the Juvenile and Domestic Relations District Court of the City of Virginia Beach, Virginia for the enforcement and/or modification of this decree as the circumstances may require.

VA.Code Ann. § 20–108 allows a court to modify a child support order, but specifically states that no support order can be retroactively modified. In these respects, this provision is similar to Wyo. Stat. Ann. § 20–2–311 (LexisNexis 2007).

[¶ 17] Father cites *Barber v. Barber*, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944) and *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910) as authority for his argument that the Virginia decree was not entitled to full faith and credit because it was subject to modification. In *Barber*, the United States Supreme Court ruled that the Tennessee court should have given full faith and credit to a North Carolina award for accrued alimony even though the initial order granting alimony was subject to future modification under North Carolina law. In *Sistare*, the Supreme Court ruled that a decree for alimony was entitled to full faith and credit in another state as to past due installments even though it could be modified prospectively by the issuing court.

[¶ 18] *Barber* and *Sistare* do not support Father's position because Mother was seeking child support payments that were in arrears and expenses which Father owed under the Virginia decree. Although Virginia law specifically allows for modification of future child support, as Wyoming law does, retroactive modification is not generally allowed. Thus, with respect to the past due child support and medical and college expenses, Father's obligation was not subject to modification under Virginia law.

[¶ 19] Moreover, like in Wyoming and Virginia, child support orders across the country are routinely subject to prospective modification in accordance with the statutes of the many states. *See* 24A Am.Jur.2d *Divorce* § 1119 (2006). The FFCCSOA specifically requires courts to recognize the orders of other states. If an obligor could claim that the child support order is not entitled to full faith and credit simply because it is subject to modification, the statute would essentially be ineffective. Clearly, the Virginia decree was entitled to full faith and credit with respect to the child support arrearages and the other past-due expenses.

[¶ 20] Father also argues that the district court should not have given full faith and credit to the Virginia child support order because the provision which required payment of child support until Child was 23, so long as she was a full-time college student, is inconsistent with Wyoming law which provides that a child support obligation termi-

2. The Uniform Interstate Family Support Act (UIFSA), adopted in Wyoming at Wyo. Stat. Ann. § 20–4–139, *et. seq.* (LexisNexis 2007), also provides procedures for enforcement of child support orders from other states. Although, as a federal law, FFCCSOA supersedes any inconsistent provisions of UIFSA, the two acts are, "for the most part, complementary or duplicative and not contradictory." 23 Am.Jur.2d *Desertion and Nonsupport* § 73 (2006).

nates once the child reaches the age of majority. *See, e.g.,* Wyo. Stat. Ann. § 20–2–313 (LexisNexis 2007). Initially, we question the premise of Father's argument. 28 U.S.C. § 1738B is phrased in mandatory language, directing a state to enforce "according to its terms a child support order made consistently with this section by the court of another State." Father does not argue that the Virginia order somehow violated § 1738B. Thus, under the Supremacy Clause, Wyoming is obligated to enforce the order, according to its terms, whether or not Virginia law differs from Wyoming law.

[¶ 21] The cases cited by Father for his statement that the full faith and credit clause does not require us to recognize a child support order of another state if it is contrary to our law do not pertain to the FFCCSOA or child support orders. *See, e.g., Wisconsin v. Pelican Ins. Co.,* 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239 (1888), overruled in part by *Milwaukee County v. M. E. White Co.,* 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935) (holding full faith and credit clause did not prevent United States Supreme Court from determining whether it had original jurisdiction over a cause of action); *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892) (determining whether law under which judgment was ordered was penal and, therefore, not subject to enforcement in another state); *Clarke v. Clarke,* 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028 (1900) (concluding decision by court in decedent's home state that her will converted all of her real property into personal property, wherever situated, was not conclusive as to the title to real property in another state); *Olmsted v. Olmsted,* 216 U.S. 386, 30 S.Ct. 292, 54 L.Ed. 530 (1910) (ruling New York court not required to give full faith and credit to Michigan statute legitimizing children born out of wedlock in order to decide the ownership of New York real property in a probate dispute); *Hood v. McGehee,* 237 U.S. 611, 35 S.Ct. 718, 59 L.Ed. 1144 (1915) (analyzing right of children adopted in Louisiana to real property under Alabama statute of descent). Thus, we do not find the cases persuasive.

 [¶ 22] Moreover, it is not accurate to say that Wyoming will never impose or recognize a child support order which continues after the child reaches the age of majority. Section 20–2–313 generally provides that a child support obligation terminates when the child reaches the age of majority.[3] However, that statute was not adopted until 2000. The Witowskis' divorce decree, which adopted the parties' agreement including the provision that required Father to pay child support beyond Child's majority, was entered by the Virginia court in 1992. Generally, "contracts are written in light of existing law, including common law, and statutes ought not be applied retroactively so as to deprive contracting parties of their rights." *Pavuk v. Rogers,* 2001 WY 75, ¶ 8, 30 P.3d 19, 20 (Wyo.2001). In 1992, we considered in *Kidd v. Kidd,* 832 P.2d 566 (Wyo.1992) the effect of the parties' agreement which had been incorporated into the divorce decree and required the father to pay child support (although at a reduced amount) after the child reached the age of majority. The agreement obligated the father to pay child support until the child was 23 years old as long as she was pursuing a higher education or living at least part time with the mother. We ruled that the provision was enforceable. *Id.* at 568–70.

[¶ 23] Father cites *Pauling v. Pauling,* 837 P.2d 1073 (Wyo.1992), for the proposition that, under Wyoming law, child support cannot continue after the child reaches the age of majority unless the child is disabled. In that case, the decree required father to pay child support until the child reached the age of majority, while the parties' settlement agreement which was incorporated in the decree required the support payments to continue until the child reached the age of 21. *Id.* at 1078. On appeal, we concluded that the agreement was "[p]resumed to merge into the divorce decree when, in the absence of clear and convincing evidence to the contrary, the parties enter into an agreement in

---

**3.** We are not presented with, nor offer any opinion on, the question of whether § 20–2–313 prevents divorcing parents from contracting to provide support for children past the age of majority.

contemplation of divorce and thereafter request the district court to approve, ratify, or confirm the agreement." *Id.* at 1078, citing *Phillips v. Phillips,* 93 Idaho 384, 462 P.2d 49 (1969). Since the decree and agreement were inconsistent, the terms of the decree controlled. *Id.*

[¶ 24] This Court stated that, in order to obligate the father to pay child support until the child reached the age of 21, modification of the decree was required. *Pauling,* 837 P.2d at 1079. We concluded, under the circumstances of that case, the district court erred by modifying the decree because there was no evidence to support continuing the child support obligation after the age of majority, such as evidence that the child was disabled. *Id.* at 1079–80.

[¶ 25] Obviously, *Pauling* is distinguishable from the case at bar. Here, there is no discrepancy between the decree and the agreement—they both required Father to pay support until Child reached the age of 23, as long as she was in college. This case is more comparable to *Kidd* where we upheld the post-minority child support obligation under the terms of the parties' agreement and the divorce decree. We conclude, therefore, the child support provision in this case did not violate Wyoming law. The district court properly gave full faith and credit to the Virginia divorce decree.

### 2. Modification of Child Support

[¶ 26] The district court denied Father's petition to modify the Virginia child support order. Pursuant to § 1738B, the district court had authority to modify the order as follows:

(e) Authority to modify orders.—A court of a State may modify a child support order issued by a court of another State if—

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

. . . .

(h) Choice of law.—

(1) In general.—In a proceeding to establish, modify, or enforce a child support order, the forum State's law shall apply except as provided in paragraphs (2) and (3).

(2) Law of State of issuance of order.— In interpreting a child support order including the duration of current payments and other obligations of support, a court shall apply the law of the State of the court that issued the order.

(3) Period of limitation.—In an action to enforce arrears under a child support order, a court shall apply the statute of limitation of the forum State or the State of the court that issued the order, whichever statute provides the longer period of limitation.

(i) Registration for modification.—If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

In accordance with § 1738B (e) and (i), the district court had authority to modify the child support order because the parents and Child no longer resided in Virginia. According to subsection (h), Wyoming law applied to the modification request.

[¶ 27] Section 20–2–311 governs modification of child support obligations. That section states, in pertinent part:

(a) Any party . . . may petition for a review and adjustment of any child support order that was entered more than six (6) months prior to the petition or which has not been adjusted within six (6) months from the date of filing of the peti-

tion for review and adjustment. The petition shall allege that, in applying the presumptive child support established by this article, the support amount will change by twenty percent (20%) or more per month from the amount of the existing order. The court shall require the parents to complete a verified financial statement on forms approved by the Wyoming supreme court, and shall apply the presumptive child support set out in this article in conducting the review and adjustment. If, upon applying the presumptive child support to the circumstances of the parents or child at the time of the review, the court finds that the support amount would change by twenty percent (20%) or more per month from the amount of the existing order, the court shall consider there to be a change of circumstances sufficient to justify the modification of the support order. The provisions of this section do not preclude a party or assignee from bringing an action for modification of a support order, based upon a substantial change of circumstances, at any time. Every three (3) years, upon the request of either parent or, if there is a current assignment of support rights in effect, upon the request of the department, the court, with respect to a support order being enforced under this article and taking into account the best interests of the child involved, shall review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to this article. Any adjustment under the three (3) year cycle shall be made without a requirement for a showing of a change in circumstances. The commencement of aid under the personal opportunities with employment responsibilities (POWER) program, medical benefits under Title XIX of the Social Security Act, food stamps and supplemental security income (SSI) shall be considered a substantial change of circumstances requiring modification of child support.

**4.** On appeal, Father suggests that he was entitled to a revision of his child support obligation under § 20–2–311 without showing a change in circumstances because no change had been made to his child support obligation within three

[¶ 28] Father did not argue that application of the presumptive child support guidelines would result in a 20 percent change in the support amount, nor did he submit a financial affidavit.[4] Instead, he maintained that he was entitled to termination of his child support obligation because a substantial change of circumstances had occurred. He argued the facts that Child was in college, her expenses were otherwise paid under the decree, and she did not reside with Mother established a substantial change in circumstances.

[¶ 29] A party seeking modification of a child support order must show a material and substantial change in circumstances not contemplated when the decree was entered. *See, e.g., McCulloh v. Drake,* 2005 WY 18, ¶ 11, 105 P.3d 1091, 1094 (Wyo.2005); *Kidd,* 832 P.2d at 569. Here, the district court ruled Father "did not offer sufficient evidence to establish any change of circumstances that would justify a reduction in the child support payments" required by the Virginia decree. Addressing Father's argument that a change in circumstances had occurred, the district court found:

> [Father] presented testimony that the child no longer lives with [Mother]; rather, that the child lives in housing in Laramie, Wyoming, where she attends college, and that he, therefore, has no support obligation. He further argues that at the time of the August 16, 2005 hearing, the child was not a full-time student; rather she was living at home before the fall semester began at the University of Wyoming. The Court rejects these arguments, and finds that the Final Decree contemplated that the child would likely have attended college away from the mother's home, that that was not to affect the child support obligation. The Court further finds that the Final Decree contemplated that the child would likely live at home when not attending college in the summer or during school vacations, but it made no exceptions

years. His argument lacks merit, however, because there is no financial or other evidence in the record to support adjustment of the order under the child support guidelines.

concerning [Father's] child support obligation.

[¶ 30] We agree with the district court. The parties clearly contemplated at the time of the decree that Child may live away from Mother while in school as they agreed to share equally in the costs of her college education including the costs of "books, tuition, **lodging, meals,** and related fees." (emphasis added). In addition to his responsibility to pay college expenses, the agreement specifically stated that Father's child support obligation would continue "while the child is a full-time college student until age 23 years." The district court acted within its discretion in ruling that Father was not entitled to termination of his child support obligation because he did not prove a substantial change in circumstances which the parties had not anticipated at the time of entry of the Virginia decree.

### 3. Admission of Exhibits Delineating Child's Medical and Education Expenses for 2002–2005 (Exhibits 1, 1A, 1B, 1C and 2).

██ [¶ 31] Father filed a motion to prohibit Mother from introducing evidence and testifying at the December 12, 2005, hearing about Child's medical and education expenses for 2002–2005. He claimed the information was not produced by Mother in a timely fashion in discovery. The district court admitted the evidence as Exhibits 1, 1A, 1B, 1C and 2 and allowed Mother to testify about the expenses at the hearing. Father claims the district court abused its discretion by denying his motion to exclude the evidence.

[¶ 32] When Mother filed her original complaint, she sought only a judgment on the child support arrearage. Father answered the complaint and submitted requests for production of documents and interrogatories to Mother, requesting information about Child's expenses. Mother objected to the discovery requests on the basis that they would not lead to discovery of admissible evidence. Mother subsequently amended her complaint to seek reimbursement for

medical and education costs in addition to the child support arrearages. At that point, Father filed a motion for summary judgment seeking, among other things, an order that the Virginia decree was not enforceable in Wyoming. The district court denied his motion and ruled, as a matter of law, the Virginia decree was entitled to full faith and credit.

[¶ 33] On December 6 and 9, 2005, Mother's attorney faxed handwritten summaries of Child's expenses for the years 2002–2005 and copies of credit card statements to Father's attorney. Denying Father's motion to exclude Mother's evidence at the December 12, 2005, hearing, the district court explained:

[Father's] Motion to Prohibit [Mother] From Introduction of Evidence at Trial Not Previously Produced and Prohibit [Mother] from Testifying to Facts not Previously Disclosed in Discovery is denied. The Court finds that [Mother] faxed copies of the summaries to [Father] on Wednesday, December 6, 2005. [Father] contended he could not read some of the entries, so [Father] asked [Mother] to refax more legible copies. On December 9, 2005, [Mother] refaxed the summaries, which [Father] alleges also had illegible entries. The Court reviewed the summaries and finds that the summaries are legible and easily read. The Court also finds that on December 9, 2005, at the request of [Father], [Mother] faxed the credit card receipts supporting each of the items in the summaries. The Court further finds that the production of the summaries were provided sufficiently in advance of the hearing for [Father] to review them and adequately prepare for the hearing. These summaries were entered into evidence as Exhibits 1, 1A, 1B, 1C and 2.

[¶ 34] Father claims that the exhibits and testimony should have been excluded because Mother did not supplement her responses to his discovery requests in accordance with W.R.C.P. 26 and 37.[5] Even if we assume

---

5. Rule 26 states in pertinent part:
 (e) Supplementation of Responses. A party who has responded to a request for discovery

with a response that was complete when made is under no duty to supplement the response to

that Mother failed to comply with the discovery rules, Father has not shown that he was prejudiced. Mother provided the information prior to the hearing, although perhaps not as early as Father would have liked. Other than the facts that he did not consider the evidence to be sufficient and he was not successful, Father does not point to any specific prejudice he suffered as a result of the delay. Rule 37 specifically states that harmless failures to supplement do not trigger the sanction of exclusion from evidence. The district court did not abuse its discretion by allowing admission of the documentary evidence and/or Mother's testimony about Child's expenses under the circumstances of this case.

### 4. Admission of Evidence About, and Award of Reimbursement for, Child's Education Expenses for 2005–2007 (Exhibits A, B and C).

[¶ 35] After the December 12, 2005, hearing, the district court granted Mother's requests for reimbursement of Child's medical and education expenses to some extent, but also ordered the parties to file written arguments on other items. Prior to final resolution of the case, Father filed his first appeal, which was dismissed by this court. *Witowski I*, ¶ 12, 156 P.3d at 1004. After the case returned to the district court, Mother filed evidence of Child's medical and education expenses for 2005 to 2007, which were set out in Exhibits A, B and C. The exhibits included a summary of expenses, credit card statements and cancelled checks. Over Father's objection, the district court allowed admission of Mother's exhibits at a hearing on October 8, 2007.

[¶ 36] Father claims the district court abused its discretion by admitting Mother's evidence of Child's education costs and granting judgment in her favor for one-half of those costs. Father argues that the summaries, credit card statements and cancelled checks "are not evidence" and Mother should have produced the actual receipts to support her claims for reimbursement.

---

include information thereafter acquired, except as follows:

. . . .

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses. Rule 37 states in relevant part:

(c) *Failure to Supplement or Amend Responses; Failure to Admit.*—

(1) A party that without substantial justification fails to supplement or amend a prior response to discovery as required by Rule 26(e) is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make disclosure.

(d) *Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.*—If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails: . . . (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories; or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B) and (C) of subdivision (b)(2) of this rule. Any motion specifying a failure under clause (2) or (3) of this subdivision shall include a certification that the movant has in good faith conferred or attempted to confer with the party failing to answer or respond in an effort to obtain such answer or response without court action. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

[¶ 37] Father did not provide a transcript of the hearing or a statement of the evidence pursuant to W.R.A.P. 3.03. Thus, we must accept the district court's findings as being based upon sufficient evidence. *See Smith v. Smith,* 2003 WY 87, ¶ 11, 72 P.3d 1158, 1161 (Wyo.2003). The district court found:

12. At the October 8, 2007 Hearing, the Court received into evidence Exhibits A, B, and C to the List and Amended List of educational related costs.

13. [Mother] testified that the expenses listed by category in Exhibit A to her List and Amended List, and which items were supported by itemized Visa Card invoices (Exhibit B), and checks (Exhibit C) were all incurred as a result of the education of [Child], the daughter of the parties, while she was a full-time student at the University of Wyoming.

14. [Mother] also testified that she had paid these educational expenses and costs on behalf of [Child] while attending the University of Wyoming, either on-campus or in off-campus programs and internships.

15. The Court finds that in the Virginia Decree of Divorce, [Father] is responsible for the payment of one-half of these educational costs and expenses, and should be ordered to reimburse plaintiff in the following amounts, the Court finds these amounts to be reasonable for two school years as a full-time student (2005–2007):

| | |
|---|---:|
| a. Lodging, $10,196 × 50% = | $ 5,098 |
| b. Food, $8,711 × 50% = | $ 4,355 |
| c. Utilities, $1,690 × 50% = | $ 845 |
| d. Educational Needs, $3,074 × 50% = | $ 1,537 |
| e. Auto, $2,436 × 50% = | $ 1,218 |
| f. Clothing, $4,473 × 50% = | $ 2,236 |
| g. Grooming, $1,313 × 50% = | $ 656 |
| h. Apartment Misc., $1,281 × 50% = | $ 640 |
| i. Recreation, $2,186 × 50% = | $ 1,093 |
| j. Miscellaneous, $1,393 × 50% = | $ 696 |
| Total | $18,374.00 |

[¶ 38] Father claims that, without the actual receipts, the district court could not be sure the expenses were reimbursable under the decree. In *Houx v. Houx,* 2006 WY 102, ¶ 25, 140 P.3d 648, 654–55 (Wyo.2006), this Court addressed the husband's argument that the trial court abused its discretion by considering testimony about a real estate purchase offer as evidence of a property's value when no documentary evidence was introduced. We concluded "the issue of doc-umentary [evidence] versus oral testimony is one of weight, not of admissibility" and the district court did not err by considering the wife's oral testimony. *Id.* The same principle applies here. The district court was free to consider the evidence before it including Mother's testimony and the documentary evidence in the form of the summary, credit card statements and cancelled checks.

[¶ 39] The district court concluded the evidence was sufficient to show that Mother's expenditures fell within the list of expenses for which Father was responsible under the decree. Without a transcript of the hearing to review, we must accept the district court's analysis and weighing of the evidence. We conclude, therefore, that the district court did not abuse its discretion by considering Mother's evidence about, or granting judgment in her favor for, Child's education expenses.

[¶ 40] Affirmed.