**Philip T. PARRY, Appellant (Defendant),**

v.

**Karen L. PARRY, Appellee (Plaintiff).**

No. 88–8.

Supreme Court of Wyoming.

Jan. 5, 1989.

James W. Gusea of Vines, Gusea & White, Cheyenne, for appellant.

Philip P. Whynott, Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, and MACY, JJ, and BROWN, J., Ret.*

* Retired June 30, 1988.

CARDINE, Chief Justice.

This is an appeal from a district court order denying the appellant's motion for retrospective modification of his divorce decree. The two issues we must consider in deciding this case are whether the district court could retrospectively modify the decree with respect to child support and whether the court erred in failing to eliminate or reduce alimony.

We affirm.

On May 23, 1984, appellee Karen L. Parry filed a complaint for divorce. For some time prior to the filing of the complaint, appellant Phillip T. Parry was living in New York and the appellee was living in Cheyenne. Against the advice of his several attorneys, appellant entered into a property settlement agreement with appellee on October 10, 1984. The agreement mentions four children: William, Ronald, Richard and Shannondoah. One of the provisions of the agreement provides:

"That the Defendant [appellant] shall pay to the Clerk of District Court, First Judicial District, child support by cash, certified check or money order, beginning on the 1st day of September, 1984, the sum of $800.00 per month, with said payment continuing until all of the minor children leave the Plaintiff's [appellee's] residence. One half of said support shall be paid on the 1st and one half shall be paid by the 15th of each month. When all the children have left the Plaintiff's residence Defendant will begin paying alimony in the amount of ½ his military retirement pay."

A decree of divorce was entered on October 23, 1984. One of the provisions of this decree, which is similar to the provision of the property settlement agreement mentioned above, states:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the sole care, custody and control of the minor offspring of the marriage, to wit: William, Ronald, Richard and Shannondoah, are hereby awarded to the Plaintiff, subject to the right of reasonable visitation of the Defendant. The Defendant is ordered to pay through the Clerk of this District Court, First Judicial District, the sum of two hundred dollars, ($200.00), per child per month. One half of said sum shall be paid on the first day of each month and one half shall be paid on the 15th day of each month, beginning on the first day of September, 1984. Said payments are to continue until said children reach their majority, are emancipated or leave the Plaintiff's residence, whichever last occurs. *As each child reaches majority, is emancipated or leaves the residence, said support for the remaining children proportionally increases so that the total amount of $800.00 per month is paid to the Plaintiff for child support.* Beginning the first month following the last payment of child support, the Defendant shall pay alimony to the Plaintiff in an amount equal to one half (½) of his military retirement pay." (Emphasis added.)

Three months later, on January 24, 1985, appellant filed a motion for relief from the decree. Appellant contended that he had misunderstood the support provision in the agreement, and that it was not until he reviewed the decree that he realized support would not decrease as each child was emancipated or reached legal age. A hearing on appellant's motion was held on April 18, 1985, and by order dated May 9, 1985, the motion was denied.

On August 5, 1985, appellee filed a motion for an order to show cause why appellant should not be held in contempt for not complying with the child support provision of the divorce decree. In response, appellant filed a motion to amend the divorce decree seeking a nunc pro tunc order reducing the child support to two hundred dollars per month per child "until such child reaches legal age, marries or becomes otherwise emancipated." Appellant also asked for elimination of alimony or reduction of alimony "to a reasonable sum." At a scheduling conference held on February 24, 1987, the court asked the parties to research the issue of whether it had the authority to modify the child support provision in a manner which would cancel or reduce the arrearages which had accrued

before the filing of the petition for modification. Appellant filed a memorandum letter with the court which concluded that the issue had not been decided in Wyoming. On August 17, 1987, a hearing was held regarding appellant's motion to amend the decree of divorce and the appellee's amended motion for order to show cause. Following that hearing, the court entered an order in which it concluded that it lacked "the authority or power to modify the Decree of Divorce prior to the date of the filing of the Motion for such modification" and that "such modification shall take effect as of the date of the filing of said Motion." The court prospectively reduced child support and awarded judgment against the defendant for back child supportas of August 17, 1987, which by that time had accrued to $14,800. The court left intact the alimony provision of the original decree of divorce. It is from this order of November 18, 1987, that appellant appeals.

The first issue we will discuss is whether the district court had authority to retrospectively modify a decree of divorce with respect to child support. We hold that it did not have that authority.[1] Generally speaking, district courts have authority to modify divorce decrees, including provisions for child support and alimony. See §§ 20–2–113, 20–2–116, W.S.1977. When a substantial change in circumstances outweighs considerations of finality, a modification is warranted. *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981). When a decree incorporates a settlement agreement, as in the instant case, courts are more reluctant to disturb the decree, because in doing so they infringe upon the principle of freedom of contract as well as concerns of finality. *Lewis v. Lewis*, Wyo., 716 P.2d 347 (1986). Nevertheless, this court has allowed prospective modification of child support provisions reached by agreement of the parties, upon a proper showing of a substantial change in circumstances. Id.

Retrospective modification is a different matter. If a court could retrospectively modify the rights of a party under a decree incorporating a settlement agreement, the agreement becomes virtually worthless. This development would violate well-established Wyoming law favoring settlement agreements. *Mentock*, 638 P.2d 156; *Lewis*, 716 P.2d 347. Furthermore, allowing retrospective modifications of divorce decrees may encourage default. A party might decide to stop payment and allow arrearages to accrue to a substantial amount, with the hope and anticipation that the court will cancel the accrued payments owed to the receiving party. We prefer a rule which encourages a party to seek modification of a divorce decree at the moment his financial situation changes. In the present case, appellant chose to simply stop making the required payments. We will not sanction this type of self-help by allowing retrospective modification of the decree.

In support of his position that Wyoming has allowed retrospective modification of child support payments, appellant cites *Wardle v. Wardle*, Wyo., 464 P.2d 854 (1970). In that case, a property settlement agreement was reached by the parties, and the parties subsequently modified the agreement. We upheld the district court's decision to modify the decree of divorce by cancelling past, unpaid child support payments, but distinguished the case from one in which the parties had not agreed, between themselves, to modify their initial settlement agreement:

"[S]ince August 1959 both Wardle and his former wife mutually consented and impliedly agreed that the wife would sup-

1. This issue was settled by the legislature in the 1987 amendment to § 20–2–113, W.S.1977 (June, 1987 Replacement) which was not in effect when appellant filed his motion to retrospectively modify the divorce decree and therefore does not govern our disposition of this case. The amendment reads in pertinent part:
   "(a) On the petition of either of the parents, the court may revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires. *Provisions respecting maintenance may be modified only as to payments or installments accruing subsequent to the petition for modification except upon agreement of the parties.*" (Emphasis added.)

port the children and forego the benefit of child-support payments from Wardle and that he would forego the right to have custody of his children during summer months. Thus, the implied agreement of the parties, subsequent to the decree, prevented vested rights from accruing to either party (as far as the parties only are concerned). *The case takes on a different complexion from one where only the husband is in default by failing to make monthly alimony or support payments.*" Id. at 856. (Emphasis added.)

In Wardle, we allowed the court to cancel child support arrearages only because there was an agreement subsequent to the original decree. This approach was consistent with our policy of encouraging settlement agreements and honoring freedom of contract. Because there is no subsequent agreement in the instant case, appellant's reliance upon Wardle is misplaced.

Appellant further suggests that the district court had the authority to retrospectively modify the divorce decree because prior to the 1987 amendment to § 20–2–113, the statute did not specifically prohibit retrospective modifications. We disagree. In his brief, appellant concedes that the majority rule is that any modification of a divorce decree relates only to the future, i.e., either from the time of entry of the decree of modification or from the date the petition for modification was filed. We are persuaded that this rule is most congruent with our prior case law. In our view, the 1987 amendment to § 20–2–113 merely codified the common law as it existed in Wyoming. We hold that the district court acted properly in refusing to retrospectively modify the divorce decree.

The second issue we must decide is whether the trial court erred in refusing to eliminate or reduce appellant's alimony payments, which are scheduled to begin the first month following the final payment of child support. The trial court had discretion to modify the provisions of the divorce decree, and absent a grave abuse of that discretion its decision will be left undisturbed. *Manners v. Manners*, Wyo., 706

P.2d 671 (1985). See also *McMillan v. McMillan*, Wyo., 702 P.2d 1279 (1985); *Heyl v. Heyl*, Wyo., 518 P.2d 28 (1974); *Tanner v. Tanner*, Wyo., 482 P.2d 443 (1971). In reviewing whether or not there was an abuse of discretion, the standard we apply is whether or not the trial court could have reasonably concluded as it did. *Martinez v. State*, Wyo., 611 P.2d 831 (1980). In the instant case, the trial court considered appellant's financial resources, his career in the Air Force, and the extent to which appellee was able to care for herself. Under the terms of the divorce decree the alimony payments might not begin until 1991, and any modification of the alimony provision at the present time might be premature. It appears, however, that the trial court here considered the alimony provision contained in the settlement agreement and decided to leave it intact. The appellant has not persuaded us that the court's decision was unreasonable under the circumstances. There was, therefore, no grave abuse of the trial court's discretion, and its decision must be left undisturbed.

AFFIRMED.

THOMAS, Justice, specially concurring.

I can agree with the result reached by the court in this case. While the majority chooses to distinguish *Wardle v. Wardle*, 464 P.2d 854 (Wyo.1970), and that distinction may be justified in terms of a strict view of ratio decidendi, I am not persuaded that Wyoming lawyers, and perhaps our district judges, might not have made a different prediction based upon dictum in *Wardle*.

In addition to that quoted by the majority, the following language from *Wardle*, 464 P.2d at 855–856, seems pertinent:

"Section 20–66, W.S.1957, provides that, after a divorce decree with allowance for the wife or children, the court may from time to time revise and alter such decree respecting the amount of the allowance. Specific authorization is contained in the section for the court to:

"'* * * make any decree respecting any of said matters which such court might have made in the original action.'

"Counsel for both parties agree there are only five other states which have a statute similar to our § 20–66, with statutory authorization for the trial court to make any decree after divorce respecting allowances for the wife or children which it might have made in the original action.

"The annotation in 6 A.L.R.2d 1277, 1293 (§ 8), sets forth that four of the five other states which have wording in their statutes similar to the language we have quoted from § 20–66 (Massachusetts, Michigan, Minnesota and Wisconsin) follow the rule that a trial court may cancel arrearages. The remaining state (Nebraska) considers the law well settled in that state that installments of alimony become vested as they accrue; that past-due installments become final judgments; and that courts have no authority to cancel or reduce the amount of accrued payments. See *Clark v. Clark*, 139 Neb. 446, 297 N.W. 661, 663 [1941].

"We take the position that since August 1959 both Wardle and his former wife mutually consented and impliedly agreed that the wife would support the children and forego the benefit of child-support payments from Wardle and that he would forego the right to have custody of his children during summer months. Thus, the implied agreement of the parties, subsequent to the decree, prevented vested rights from accruing to either party (as far as the parties only are concerned). The case takes on a different complexion from one where only the husband is in default by failing to make monthly alimony or support payments.

"Under equitable principles, it is within the prerogatives of a trial court to leave the parties where they are, as far as *past* payments are concerned—if the court considers it equitable and right to do so and if that can be done without jeopardizing the welfare of the children. If we were to apply appellant's theory of a 'vested' right, the courts would be powerless to apply equity.

"In *Urbach v. Urbach*, 52 Wyo. 207, 73 P.2d 953, 960, 113 A.L.R. 889, [1937], Chief Justice Blume pointed out that our district courts administer all law—the common law, statutory law, and principles of equity. At 73 P.2d 961, he concluded the grant of statutory power to provide for the custody and care of children in connection with a divorce decree does not abrogate the equitable powers of the court existing independent thereof. It follows from this that the equitable powers of the court likewise exist in an action having to do with unpaid child-support installments.

"In *Duffy v. Duffy*, 19 N.J.Misc. 332, 19 A.2d 236, 237 [1941], where it was argued that arrearages became vested as they accrued, the court said, were this the law, the court would be powerless to apply equitable principles in the administration of its statutory jurisdiction over alimony and maintenance. It went on to say, if the court could not apply equitable principles, it would be obliged to act as a mere administrative agency, impotent to prevent is processes from being employed in the furtherance of inequity and injustice."

It is fair to say that, in earlier years, given the paucity of appellate litigation in Wyoming, this court often articulated principles by way of dictum because the opportunity to structure the law through direct holdings was limited. It is also fair to note that the practice has not completely disappeared from the opinions of our court. Given the language quoted above, and the fact that the provision from § 20–66, W.S.1957, which the court relied upon, still appears in § 20–2–116, W.S.1977 (June 1987 Repl.), I am satisfied that there well may have been instances in which support payments were adjusted retrospectively. If that were true, it would make necessary the amendment to § 20–2–113, W.S.1977 (June 1987 Repl.), which is quoted in the first footnote of the majority opinion in order to adjust the law.

While I do concur in the disposition of this case, particularly in light of the amendment to § 20–2–113, W.S.1977

(June 1987 Repl.), I believe that, in order to assure that any contrary orders remain undisturbed, it would be far better to declare that the effects of this decision are prospective only, and to specifically disavow the contrary dictum in *Wardle*.