2002 WY 159

**Kathryn PASENELLI, Appellant (Petitioner),**

v.

**Robert PASENELLI, Appellee (Respondent).**

No. 02–11.

Supreme Court of Wyoming.

Oct. 21, 2002.

Tammy A. Burt of Harris Law Firm, P.C., Evanston, Wyoming, Representing Appellant.

Mike Cornia, Evanston, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

* Chief Justice at time of expedited conference.

HILL, Chief Justice.

[¶ 1] Appellant, Kathryn Pasenelli (Mother), filed a petition in the district court seeking to modify a divorce decree so as to increase the child support payments due her by Robert Pasenelli (Father). The district court denied that motion and Mother contends the district court abused its discretion both in interpreting the parties' stipulation regarding child support, as well as in applying the statutory child support guidelines.

[¶ 2] We will modify, but will otherwise affirm, the district court's order and remand for entry of a revised order consistent with this opinion.

## ISSUES

[¶ 3] Mother states these issues:

I. Did the trial court abuse its discretion in improperly denying Kathryn Pasenelli's petition to modify child support?

II. Did the trial court abuse its discretion in the manner in which [it] applied the child support guidelines?

Father abbreviates that statement of the issues to this terse phrase: "Did the trial court abuse its discretion [in] denying the modification?"

## FACTS

[¶ 4] Proceedings in this matter commenced on December 5, 1997, when Father filed a complaint for divorce. A stipulation settling the issue extant between the parties was filed in the district court on March 18, 1998. That stipulation revealed that the parties were the parents of four children, who were, at the time, ages ten, eight, three, and nine months. Mother was awarded primary physical custody of the children and has been their primary caretaker throughout their lives. Father was required to pay Mother $950.00 per month in child support for the four children. The stipulation contained this provision:

"... It is agreed that the parties' income shall be reviewed forty-eight (48) months from the date of this agreement, however, no change in support shall be made unless

the support amount will change by twenty percent (20%) or more per month from the amount existing in this agreement. However, pursuant to sections 20–6–302 and 20–6–306, W.S.A (1997) as amended, either party may petition for a review and adjustment of the child support order under the procedure provided for therein."

The stipulation also provided that Father would pay Mother rehabilitative alimony in the amount of $400.00, for 48 months.[1] The alimony was to be paid to Mother so that she could complete a four-year college degree, thus enabling her to better provide for herself and her children. The terms of the stipulation were "approved, confirmed and incorporated" into the divorce decree which was entered on March 20, 1998.

[¶ 5] On September 14, 2000, Mother filed a petition to modify the decree of divorce, alleging that the incomes of both Mother and Father had changed to such an extent that it would change the child support due her by 20% or more per month. On September 26, 2000, Father answered that petition contending that the parties' stipulation and the decree of divorce prohibited Mother from seeking a modification of child support until at least March 20, 2002. The district court held a hearing at which both parties testified. There was no disagreement about what Father's income was (approximately $45,000.00 per year) and what the presumptive support for the four children would be (approximately $1,350.00 per month). The only disagreement was what income should be attributed to Mother. Mother did not work, as she was going to college and caring for the four children. However, Mother agreed that a minimum wage income should be attributed to her for purposes of the child support computation. That attribution of income to Mother did not change Father's presumptive support level of $1,350.00. Father contended that Mother should be able to earn a lot more than minimum wage and that the district court should take into account the fact that Mother's parents contributed to paying many, if not most, of her household expenses. Father also contended that the district court should consider

---

1. The period during which alimony was due expired on February 5, 2002.

that Father had remarried and that he and his new wife had a child together, and wife had two other children from previous relationships. Complicating matters for Father, his new wife had returned to Mexico because of a problem with her visa and he was having to send her as much as $800.00 a month for support (though she too lived with parents and/or relatives).

[¶ 6] Mother's appeal challenges the reasoning contained in the district court's decision letter, as well as the order denying her motion to modify child support. First, the district court reasoned that the alimony was really more in the nature of child support and, therefore, Mother was already receiving the equivalent of $1,350.00 in child support. The district court also concluded that the stipulation recited above meant "that there was no modification of child support contemplated or intended by the parties during the forty-eight month period following the divorce unless for some reason there [weren't] four children to support and even then the amount of child support was specifically stated. There would be no review or change of the child support." Continuing, the district court found that Father was "over employed, in that he works two jobs and 80 hours a week to generate his current income. [Mother] has chosen to go to school and currently is under employed. She has finished three years of college and expects to earn a Bachelor of Science degree in the spring of 2002, approximately 48 months after the decree of divorce. The Court finds that the imputed income of $750.00 per month based upon minimum wage as suggested by [Father], is unrealistically low considering that she has completed three years of college. She is certainly capable of earning at least the amount earned by [Father] in his janitorial service job."

[¶ 7] The district court also found grounds on which to deviate from the presumptive child support level established by the governing statute. Those grounds were: "That [Father] has found time outside of his eighty-hour work week to woo and wed a new wife and as a result has another wife and child to support;" and also "[t]he children are getting older, some in their teens,

and it requires more to support them. On the other hand, [Mother] is receiving the benefit of a home with expenses paid by her parents. The foregoing factors would result in a reduction of the amount of child support set forth in the guidelines of $1,350.00 per month to $1,150.00. However[,] because of the agreement, no increase will be awarded."

## STANDARD OF REVIEW

[¶ 8] The district court viewed its role, in deciding the issues presented to it, as being governed by rules of contract construction. We view agreements with respect to child support with favor; however, we have held that child support agreements are not contracts and contract law has no place in the consideration of child support agreements. The primary consideration regarding child support agreements is the best interests of the child, and we will not turn to contract law to abrogate this controlling consideration. *Sharpe v. Sharpe*, 902 P.2d 210, 213–14 (Wyo.1995). Moreover, a custodial parent may not bargain away a child support obligation. That obligation inures to the benefit of the child, not the custodial parent. *Whitt v. State ex rel. Wright*, 2001 WY 128, ¶ 19, 36 P.3d 617, ¶ 19 (Wyo.2001); *Hurlbut v. Scarbrough*, 957 P.2d 839, 842 (Wyo.1998); *Bellamy v. Bellamy*, 949 P.2d 875, 877 (Wyo. 1997); *also see Wright v. Wright*, 5 P.3d 61, 62–64 (Wyo.2000); and *Garver v. Garver*, 981 P.2d 471, 474 (Wyo.1999).

[¶ 9] Our methodology in analyzing cases such as these has been well summarized by Justice Thomas:

We have had occasion to consider the statutory provisions in the context of petitions to modify child support in several instances. *Cranston v. Cranston*, 879 P.2d 345 (Wyo.1994); *Smith v. Smith*, 863 P.2d 624 (Wyo.1993); *Pauling v. Pauling*, 837 P.2d 1073 (Wyo.1992); *Hasty v. Hasty*, 828 P.2d 94 (Wyo.1992); *Roberts v. Roberts*, 816 P.2d 1293 (Wyo.1991); and *Morehead v. Morehead*, 811 P.2d 721 (Wyo.1991). In *Morehead*, we articulated the proposition that the guidelines structure a rebuttable presumption that constitutes a goal upon which judicial discretion remains in place to deviate from the guidelines. In *Roberts*,

we noted the twenty percent deviation establishes a change of circumstances sufficient to justify a modification, but we held the court may deviate from the guidelines if it articulates a finding on the record that the application of the guidelines would be unjust or inappropriate. In *Hasty*, we identified an abuse of discretion by the district court in concluding it had to apply the guidelines strictly and could not deviate from them by considering support obligations to later-born minor children. In *Pauling*, we rejected an argument that the statute requires modification of child support upon a finding there would be a twenty percent change by application of the guidelines. There, we rearticulated the concept of a rebuttable presumption that modification would be warranted when application of the guidelines demonstrated the twenty percent deviation. We held the trial court's discretion to deviate with respect to modification of an existing support order refuted the argument that the legislature had interfered with the discretion of the court. In *Smith*, we held there had been no abuse of discretion in ordering a change in child support which resulted in nearly a threefold increase. We held there was no abuse of discretion even though the increase inhibited the father from qualifying for a home mortgage loan. Most recently, in *Cranston*, our ruling stated the trial court had not abused its discretion in light of evidence demonstrating a lack of substantial contributions by the father beyond the monetary child support which would justify deviation from the guidelines.

These constructions of the statute have evolved in view of our standard proposition that modification of divorce decrees is appropriate only in limited circumstances.

> The party seeking modification must establish there has been a material and substantial change in circumstances which outweighs the interest of society in applying the doctrine of *res judicata.* *Pauling v. Pauling*, 837 P.2d 1073 (Wyo. 1992); *Crawford v. Crawford*, 828 P.2d 1192 (Wyo.1992); *Dorr v. Newman*, 785 P.2d 1172 (Wyo.1990); *Mentock v. Mentock*, 638 P.2d 156 (Wyo.1981). The trial court is vested with discretion to modify the provisions of the divorce decree and, absent a grave abuse of that discretion, we will not disturb its decision. *Parry v. Parry*, 766 P.2d 1168 (Wyo.1989); *Manners v. Manners*, 706 P.2d 671 (Wyo.1985). The standard we apply in review of cases asserting abuse of discretion as an issue is whether the trial court reasonably could have concluded as it did. *Rude v. State*, 851 P.2d 20 (Wyo.1993), and *Parry* (both citing *Martinez v. State*, 611 P.2d 831 (Wyo.1980)).

*Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993).

This policy manifests a balance between the doctrine of finality of judgments which is supported by the doctrine of *res judicata* and the statutes providing for modification of the provisions of a decree relating to child custody, support, and alimony. The trial court is charged with resolving that tension, and it must do so in the exercise of discretion. The discretion afforded the trial judge is encompassed in WYO.STAT. § 20–6–302(b). The discretion is guided by a list of thirteen factors, but the final one, "[o]ther factors deemed relevant by the court * * *," is a classic acknowledgment of judicial discretion.

> The child support guidelines identify a base from which the judge must invoke the exercise of discretion. In the absence of an agreement with respect to child support, the guidelines will have a more significant controlling impact. When an agreement as to child support is involved, however, more weight may be given to the agreement. Child support agreements entered into by the parties are favored by the courts. *Beard v. Beard*, 368 P.2d 953 (Wyo.1962).

*Smith v. Smith*, 895 P.2d 37, 40–41 (Wyo. 1995).

[¶ 10] This matter was heard by the trial court and findings of fact and conclusions of law are of record:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly

admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Hammond v. Hammond,* 14 P.3d 199, 203 (Wyo.2000) (*quoting Fremont Homes, Inc., v. Elmer,* 974 P.2d 952, 958 (Wyo.1999) (citations omitted)). This court reviews the trial court's conclusions of law de novo. *Hammond,* 14 P.3d at 201.

*Jessen v. Jessen,* 2002 WY 33, ¶ 7, 41 P.3d 543, ¶ 7 (Wyo.2002).

 [¶ 11] Of course, a district court has broad discretion in determining the proper amount of a child support award, and we will not disturb the trial court's ruling unless there is a clear showing of an abuse of discretion. *Sharpe,* 902 P.2d at 213. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998).

 [¶ 12] To the extent we are called upon to construe the agreement between the parties, we would apply these principles: Our primary focus in construing or interpreting a contract is to determine the parties' intent, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. Common sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts. We also have recognized that the language of a contract is to be construed within the context in which it was written, and the court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made. *Williams Gas Processing—Wamsutter Company v. Union Pacific Resources Company,* 2001 WY 57, ¶¶ 11–12, 25 P.3d 1064, ¶¶ 11–12 (Wyo.2001).

### DISCUSSION

 [¶ 13] Father contends, and the district court found, that it was the parties' intent that there was to be a "moratorium" on modification of child support for a period of 48 months. Of course, under many circumstances, such an agreement would run afoul of our rule that a custodial parent may not waive child support. However, in this case, we need not cross that bridge as we view the stipulation to be unambiguous. Mother was to receive $950.00 in child support. She was to receive $400.00 in alimony, for 48 months, so that she could pursue her education. During that 48–month period, either parent could petition to modify child support if there was a 20% difference involved, as required by the governing statute. However, the parties did agree that at the end of the 48–month time period, during which Mother received alimony, there definitely would be a review of child support if the Mother's increase in income (because by then she would have achieved a college degree and be working in a higher paying job) had created a 20% change in the presumptive support level. Therefore, we hold that the agreement did not prohibit, or in any other way inhibit, Mother's statutory right to pursue a modification of child support under Wyo. Stat. Ann. § 20–2–311 (LexisNexis 2001).[2]

---

2. An additional factor underlying the stipulation may have been that the presumptive support schedule is subject to revision every four years:

 **§ 20–2–306. Revision of presumptive child support.**

 On or before December 1, 1996, and at least once every four (4) years thereafter, the department of family services shall review the presumptive child support established under this article to ensure that application results in the determination of appropriate child support

 [¶ 14] The district court determined that Father's presumptive support obligation would be $1,350.00, according to the agreement of the parties and as established by the evidence of record. Furthermore, the district court determined that Mother, in effect, was receiving $1,350.00 in child support payments. The district court applied the standards set out in Wyo. Stat. Ann. § 20-2-307 (LexisNexis 2001) and determined that he would deviate from presumptive support down to the level of $1,150.00 and thus, no additional support was appropriate. We agree with the district court in part. However, the record is clear beyond cavil that wife was only receiving $950.00 in child support.

A conclusion that the rehabilitative alimony awarded to Mother should be treated as child support is incontrovertibly wrong. The district court found, and the parties agreed, that the presumptive support level, given Father's income, was $1,350.00, a change of well over 20% from $950.00. In the exercise of its discretion, the district court determined that because Father had four new mouths to feed, because he often worked as much as 80 hours per week, and because Mother should be working and earning more than $750.00 per month, in addition to going to school full-time and caring for four small children, it would deviate[3] from the child support guidelines

award amounts and shall submit a report to the joint labor, health and social services interim committee and shall recommend any proposed changes.

Although the district court took parol evidence from both parties in its effort to "clarify" the "48 month" provision in the stipulation, it is readily apparent from the transcript of the hearing that neither party fully understood or had given much thought to the provisions the lawyers put into that stipulation.

Wyo. Stat. Ann. § 20-2-306 (LexisNexis 2001).

### 3. § 20-2-307. Presumptive child support to be followed; deviations by court.

(a) The presumptive child support established by W.S. 20-2-304 shall be rebuttably presumed to be the correct amount of child support to be awarded in any proceeding to establish or modify temporary or permanent child support amounts. Every order or decree providing for the support of a child shall set forth the presumptive child support amount and shall state whether the order or decree departs from that amount.

(b) A court may deviate from the presumptive child support established by W.S. 20-2-304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree. In determining whether to deviate from the presumptive child support established by W.S. 20-2-304, the court shall consider the following factors:

(i) The age of the child;

(ii) The cost of necessary child day care;

(iii) Any special health care and educational needs of the child;

(iv) **The responsibility of either parent for the support of other children, whether court ordered or otherwise;**

(v) The value of services contributed by either parent;

(vi) Any expenses reasonably related to the mother's pregnancy and confinement for that child, if the parents were never married or if the parents were divorced prior to the birth of the child;

(vii) The cost of transportation of the child to and from visitation;

(viii) The ability of either or both parents to furnish health, dental and vision insurance through employment benefits;

(ix) The amount of time the child spends with each parent;

(x) Any other necessary expenses for the benefit of the child;

(xi) **Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:**

**(A) Prior employment experience and history;**

**(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;**

**(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;**

**(D) Availability of employment for which the parent is qualified;**

**(E) Prevailing wage rates in the local area;**

**(F) Special skills or training; and**

**(G) Whether the parent is realistically able to earn imputed income.**

(xii) **Whether or not either parent has violated any provision of the divorce decree, including visitation provisions, if deemed relevant by the court; and**

(xiii) **Other factors deemed relevant by the court.**

(c) If the parties fail to agree that the presumptive child support amount under W.S. 20-2-304 is appropriate, the court may order the party seeking to deviate from the presumptive child support amount to pay reasonable attorney fees and court costs to the other party unless,

and reduce Father's child support obligation to $1,150.00.

[¶ 15] We cannot agree that the alimony payment can be transformed into child support when there is no evidence in the record to support such a conclusion, other than Father's self-serving, parol contradiction of what the parties' stipulation specifically provided. We take note, as well, that to the extent Father believed the alimony was intended to be child support, he was, at best, very uncertain. It seems clear that Father's "theory" was one in search of some supporting evidence, and the only such evidence was that Father thought maybe it might be so. In addition, the district court's conclusion

that Mother should have been working full-time and earning more than $750.00 a month, going to school full-time, and caring for four small children is misguided.[4]

## CONCLUSION

[¶ 16] Time is wasting, for Mother and the four children, as well as for Father and his new family. This Court may affirm a judgment or order on any legal ground appearing in the record. *Jessen*, ¶ 7; *City of Laramie v. Hysong*, 808 P.2d 199, 202 (Wyo. 1991). We affirm the district court's order to the extent that it found a 20% change would result if the petition to modify child support were considered by the district court.[5] We

after hearing the evidence and considering the factors contained in subsection (b) of this section, the court deviates from the presumptive support amount.

(d) Agreements regarding child support may be submitted to the court. All such agreements shall be accompanied by a financial affidavit as required by W.S. 20–2–308. The court shall use the presumed child support amounts to review the adequacy of child support agreements negotiated by the parties. If the agreed amount departs from the presumed child support, the parties shall furnish statements of explanation which shall be included with the forms and shall be filed with the court. The court shall review the agreement and inform the parties whether or not additional or corrected information is needed, or that the agreement is approved or disapproved. No agreement which is less than the presumed child support amount shall be approved if means tested sources of income such as aid under the personal opportunities with employment responsibilities (POWER) program, health care benefits under Title XIX of the Social Security Act, food stamps, supplemental security income (SSI) or other similar benefits are being paid on behalf of any of the children.

Wyo. Stat. Ann. § 20–2–307 (LexisNexis 2001) (emphasis added).

**§ 20–2–303. Definitions.**

(a) As used in this article:

(i) "Age of majority" means as defined in W.S. 14–1–101(a) or 14–2–204(a), whichever is applicable;

(ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, food stamps and supplemental security income (SSI) shall not be considered as income. **Gross income also means potential income of parents who are voluntarily unemployed or underemployed;**

(iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income;

(iv) "This article" means W.S. 20–2–301 through 20–2–315.

Wyo. Stat. Ann. § 20–2–303 (LexisNexis 2001) (emphasis added).

4. As set out by Father, the argument basically was that Mother, who had worked only twice in her life for brief periods of time, at minimum wage jobs, and who had been unemployed for the preceding six years, should get a full-time job earning more than the minimum wage because she had completed two years of college—and at the same time go to school full-time and care for the four children. We take note that, as a general rule, the high-paying job comes after the college degree is completed and the worker is available to work full-time.

5. § 20–2–311. Adjustment of child support orders.

affirm the district court's finding that the presumptive support level here is $1,350.00. We also affirm the district court's exercise of its discretion to deviate in a downward fashion to a support level of $1,150.00 per month. We modify the district court's order to delete the finding that the alimony was child support. We remand the matter to the district court to modify its order so as to direct Father to pay child support in the amount of $1,150.00 per month to Mother, retroactive to October of 2000, as well as to consider other matters that may now be ripe for consideration or reconsideration at this juncture.

(a) Any party, or the department of family services in the case of child support orders being enforced by the department, may petition for a review and adjustment of any child support order that was entered more than six (6) months prior to the petition or which has not been adjusted within six (6) months from the date of filing of the petition for review and adjustment. **The petition shall allege that, in applying the presumptive child support established by this article, the support amount will change by twenty percent (20%) or more per month from the amount of the existing order.** The court shall require the parents to complete a verified financial statement on forms approved by the Wyoming supreme court, and shall apply the presumptive child support set out in this article in conducting the review and adjustment. **If, upon applying the presumptive child support to the circumstances of the parents or child at the time of the review, the court finds that the support amount would change by twenty percent (20%) or more per month from the amount of the existing order, the court shall consider there to be a change of circumstances sufficient to justify the modification of the support order.** The pro-visions of this section do not preclude a party or assignee from bringing an action for modification of a support order, based upon a substantial change of circumstances, at any time. Every three (3) years, upon the request of either parent or, if there is a current assignment of support rights in effect, upon the request of the department, the court, with respect to a support order being enforced under this article and taking into account the best interests of the child involved, shall review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to this article. Any adjustment under the three (3) year cycle shall be made without a requirement for a showing of a change in circumstances. The commencement of aid under the personal opportunities with employment responsibilities (POWER) program, medical benefits under Title XIX of the Social Security Act, food stamps and supplemental security income (SSI) shall be considered a substantial change of circumstances requiring modification of child support.
Wyo. Stat. Ann. § 20–2–311 (LexisNexis 2001) (emphasis added).