2006 WY 83

**Mitchell S. SHELHAMER,
Appellant (Plaintiff),**

v.

**Sharon G. SHELHAMER, n/k/a Sharon
G. Altermatt, Appellee (Defendant).**

No. 05–155.

Supreme Court of Wyoming.

July 17, 2006.

Representing Appellant: Georgia L. Antley and Luke Esch, Student Intern, Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Representing Appellee: Sharon G. Altermatt, Pro se.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Mitchell S. Shelhamer (Father), seeks review of the district court's order that awarded him primary custody of the parties' seventeen-year-old son. The parties had stipulated to that change in custody. The district court's order also provided that Appellee, Sharon G. Altermatt, fka Sharon G. Shelhamer (Mother), pay child support in the amount of $50.00 a month to Father, a deviation from the presumptive support level. In addition, the district court's order provided that Mother's child support responsibility would cease on August 31, 2005. Father contends that the district court abused its discretion: (1) In ordering

* Chief Justice at time of oral argument.

the cessation of child support when the child reached the age of majority; (2) in ordering only minimal child support; and (3) in employing improper reasons for a deviation from the presumptive support level. Although we conclude that the district court's order was erroneous in several respects, we conclude that all errors were *de minimus* and harmless under the circumstances of this case. Thus, we will affirm the district court's order.

## ISSUES

[¶ 2] Father raises these issues:

I. Whether the district court abused its discretion in terminating child support in contravention of Wyo. Stat. Ann. § 20–2–313(a)(iv) and/or Wyo. Stat. Ann. § 14–2–204(a)(iii).

II. Whether the district court erred by omitting the presumptive child support amount in its order.

III. Whether the district court abused its discretion by using improper reasons as deviation factors from presumptive child support.

[¶ 3] Mother filed her brief one day late. See W.R.A.P. 7.06(b) and 7.10. In addition, her brief did not comply with the requirements set out in the Wyoming Rules of Appellate Procedure. See W.R.A.P. 7.01 and 7.02. For these reasons we will not hear or consider Mother's contentions. See W.R.A.P. 7.11 and 1.03.

## FACTS AND PROCEEDINGS

[¶ 4] The record does not reflect when the parties were married, but by Decree entered on October 8, 1993, the parties were divorced. The Decree incorporated the parties' stipulation as to the terms of the divorce. The Decree of Divorce awarded the parties joint custody of the parties' four children, with Mother having "present physical care, custody and control of the minor children." Father was to pay Mother $200.00 per month, per child in child support (a total of $800.00). The parties also agreed to "split equally any and all medicals incurred by the parties' four minor children." Father was to claim the older two children for income tax

purposes until they were 18, and Mother was to claim the two younger children for income tax purposes until they were 18. Of special significance to this case, Mother was awarded primary custody of the parties' youngest son, James, who was born on October 11, 1987. Father also agreed to be responsible for any debt incurred by the parties prior to the filing of the divorce action.

[¶ 5] In an Order for Modification of Support by Default entered on October 28, 1996, the district court awarded Mother a judgment in the amount of $10,811.38 for child support arrearages. Father sought reconsideration of that order, and the district court did conduct proceedings in the nature of a reconsideration of its October 28, 1996, order. The parties then entered into another stipulation. On April 15, 1997, the district court entered another order based on that stipulation. That order provided: For reasonable visitation for Father; that Father would pay $112.50 per month per child in child support (a total of $450.00 per month); that Father was "deemed current on all child support due by him to [Mother] on or before December 1, 1996[;]" that Mother would provide health insurance and be responsible for all healthcare costs for the children; and that Mother would be entitled to claim all minor children for income tax purposes.

[¶ 6] The parties entered into another stipulation which was filed in the district court on October 13, 1998. By order entered on October 13, 1998, the district court effectuated that stipulation to the effect that Father would pay Mother $150.00 per month for the three children who were still minors (a total of $450.00 per month), and that that child support "does comport with the provisions of the Wyoming Child Support Guidelines[.]"

[¶ 7] The parties entered into yet another stipulation which was filed in the district court on July 14, 2003. By order entered on August 21, 2003, the district court approved that stipulation:

1. [Father] filed his petition for modification of child custody and child support on or about July 2, 2002.

2. Entry of default against [Mother] took place on July 26, 2002. Thereafter, [Mother] moved to set aside the default and that hearing was scheduled for October 9, 2002.

3. The parties have reached resolution concerning the issues in [Father's] petition for modification.

4. That stipulation should be approved by the court relative to the change in custody of the minor child Jenna Mae Shelhamer who achieved majority on October 9, 2002 [dob October 9, 1984].

5. [Father] is employed by the Bank of Greybull in Greybull, Wyoming, and has additional income from horseshoeing both of which lead to a net income of $2,019.30 per month. [Mother] is employed as a grant writer on contract with Big Horn County, Wyoming. Her net monthly income is $2,336.00.

6. Child support computed in accordance with the presumptive child support guidelines of 20–2–304 is $50.00 per month effective the month of July, 2002 continuing through May, 2003 owed from [Father] to [Mother]. Commencing with the month of June, 2003 in accordance with the agreement of the parties, presumptive child support in accordance with Wyoming Statute 20–2–304 is $352.38 per month due from [Father] to [Mother] payable through the Clerk of District Court.

7. The parties' agreement makes for no deviation from the presumptive child support guidelines.

8. The parties have reserved the issue of arrearages, if any.

[¶ 8] The order provided that the agreement made no deviation from presumptive support, yet Mother was required to pay Father only $50.00 a month in child support for the support of the child who was in Father's custody, whereas Father was required to pay Mother $352.38 a month in child support because she retained custody of James. Thus, while the stipulation and associated order purports that the child support awarded is in conformity with the guidelines, clearly that was not the case given the parties' respective incomes.

[¶ 9] On December 10, 2004, Father filed a Petition to Modify Decree Regarding Custody. He filed that petition pro se and its format was that of a fill-in-the-blank form, although the source of that form is not evident from the record. Mother filed a response on January 3, 2005. She used a similar type of form (Response to Petition) and also appeared pro se. The record is not clear if the parties were represented by counsel in any of the earlier proceedings, although in some of them it appears at least one of the parties may have been represented by counsel. The essence of Father's petition in this case was that the youngest child, James, was now living with Father and that Father should, therefore, be awarded custody, and that Mother should pay him child support in accordance with the child support guidelines. In her response to Father's petition, Mother stated the following:

James did not return from his summer visit with his father. It was my wish that he would return, however, since he is 17 years old, I did not think it prudent to force him. I would ask the Court to consider allowing me to pay less than the guidelines as I made an agreement with [Father] to cut his payment in half and have his several thousand dollars arrearage forgiven when he wanted to pay less in exchange for giving up his custody of the four children, an agreement the Court approved. I would also ask that I be required to pay $50/month only until James is 18, as he is almost emancipated, and it is only through good grace that I am allowing him to live there. I think it is important to note that my husband provided health insurance on all of the children for 8 years, which at the time he dropped them was costing $358.00 a month. The insurance premium was more than we were receiving in child support.

[¶ 10] The district court conducted a hearing into this matter at which the parties appeared pro se. The proceedings were informal, with Father essentially giving a narrative of what he wanted to say and asking questions of Mother. Mother did about the same thing, giving a narrative of what she wanted to say and asking some questions of Father. The district court asked questions

of both parties as well. No exhibits were introduced into evidence, or at least none appear of record. At the conclusion of that hearing, the district court asked Mother to prepare the judgment/order, and she indicated that she would do so. However, we cannot tell for certain who actually did prepare the appealable order in this case, and the order did not indicate that either party approved or disapproved of it as provided for in W.R.C.P. 58.

■ [¶ 11] The order issued by the district court awarded primary custody of James to Father. It also provided that Mother was to pay Father $50.00 per month for child support from January 1, 2005, through August 31, 2005, "at which time [Mother's] child support obligation shall cease, (i.e., last child support due on August 1, 2005)." The district court indicated it would deviate from the presumptive child support guidelines "pursuant to W.S. § 20–2–307(b)(i), (v) and (xiii) including the age of the child, who will be 18 in October of 2005 and the fact that a previous arrearage was accrued by [Father] which was forgiven by [Mother]."[1]

■ [¶ 12] The order appealed in this case did not set out the detail of the district court's findings that supported its decision to deviate from the child support guidelines. The presumptive child support schedule must be followed unless the district court finds that there are factors that warrant a deviation. Wyo. Stat. Ann. § 20–2–307 (LexisNexis 2005) provides:

§ 20–2–307. Presumptive child support to be followed; deviations by court.

(a) The presumptive child support established by W.S. 20–2–304 shall be rebuttably presumed to be the correct amount of child support to be awarded in any proceeding to establish or modify temporary or permanent child support amounts. Every order or decree providing for the support of a child shall set forth the presumptive child support amount and shall state whether the order or decree departs from that amount.

(b) A court may deviate from the presumptive child support established by W.S. 20–2–304 **upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree.** In determining whether to deviate from the presumptive child support established by W.S. 20–2–304, the court shall consider the following factors:

(i) **The age of the child;**

(ii) The cost of necessary child day care;

(iii) Any special health care and educational needs of the child;

(iv) The responsibility of either parent for the support of other children, whether court ordered or otherwise;

(v) **The value of services contributed by either parent;**

(vi) Any expenses reasonably related to the mother's pregnancy and confinement for that child, if the parents were never married or if the parents were divorced prior to the birth of the child;

(vii) The cost of transportation of the child to and from visitation;

(viii) The ability of either or both parents to furnish health, dental and vision insurance through employment benefits;

(ix) The amount of time the child spends with each parent;

(x) Any other necessary expenses for the benefit of the child;

(xi) Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In

---

1. Of course, a parent who is to receive child support payments under a court order may not legally bargain away those funds because they belong not to the parent, but to the child. *Whitt*

*v. State ex rel. Wright,* 2001 WY 128, ¶ 19, 36 P.3d 617, 622 (Wyo.2001). Although that issue is not raised in this case, we do not want our affirmance to appear to condone such conduct.

making that determination the court shall consider:

(A) Prior employment experience and history;

(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;

(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;

(D) Availability of employment for which the parent is qualified;

(E) Prevailing wage rates in the local area;

(F) Special skills or training; and

(G) Whether the parent is realistically able to earn imputed income.

(xii) Whether or not either parent has violated any provision of the divorce decree, including visitation provisions, if deemed relevant by the court; and

(xiii) **Other factors deemed relevant by the court.**

(c) If the parties fail to agree that the presumptive child support amount under W.S. 20-2-304 is appropriate, the court may order the party seeking to deviate from the presumptive child support amount to pay reasonable attorney fees and court costs to the other party unless, after hearing the evidence and considering the factors contained in subsection (b) of this section, the court deviates from the presumptive support amount.

(d) Agreements regarding child support may be submitted to the court. All such agreements shall be accompanied by a financial affidavit as required by W.S. 20-2-308. The court shall use the presumed child support amounts to review the adequacy of child support agreements negotiated by the parties. If the agreed amount departs from the presumed child support, the parties shall furnish statements of explanation which shall be included with the forms and shall be filed with the court. The court shall review the agreement and inform the parties whether or not additional or corrected information is needed, or that the agreement is approved or disapproved. No agreement which is less than the presumed child support amount shall be approved if means tested sources of income such as aid under the personal opportunities with employment responsibilities (POWER) program, health care benefits under Title XIX of the Social Security Act, food stamps, supplemental security income (SSI) or other similar benefits are being paid on behalf of any of the children. [Emphasis added denoting those subsections cited by the district court in its order.]

[¶ 13] The district court's oral comments at the conclusion of the informal hearing held in this matter on April 11, 2005, are more detailed:

THE COURT: Okay. Then the Court is prepared to go ahead and enter an order in this case. And the order will provide for a change of custody as agreed by the parties, and so that the child, James, is now in the legal and physical custody of his father subject to visitation with his mother.

The Court will further advise the parties that any modification, as far as the date that it can relate back to, cannot go back farther that the date the petition for modification was filed, which was December 10th, 2004. So the previous orders remained in full force and effect until the date of December 2004.

Considering that fact ... apparently Mr. Shelhamer stopped paying support approximately in July of 2004, also considering the amount of past due support that was actually forgiven by Ms. Altermatt and the indebtedness that she was required to pay as a result of the bankruptcy having been filed by Mr. Shelhamer, the Court finds that the presumed child support, if it were followed according to the guidelines, from December 10th, 2004, up to the end of April, would be $391.35, and after that it would be $300.12. However, the Court concurs that this is a case in which a deviation is appropriate in view of the facts that have been testified to and that I already have mentioned.

The Court will refer to the section that provides for deviations by the Court, which is Section 20-2-307, that the presumptive-

ly—presumptive child support is rebuttably presumed to be the correct amount of child support to be awarded in any proceeding to establish or modify temporary or permanent child support payments.

Also, it provides, the Court may deviate from the presumptive child support upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case.

And in this case, the Court finds that the application of the presumptive child support would be both unjust and inappropriate. And that is taking into consideration the age of the child, the expense that may be involved in raising this child at the age of 19[sic] [James was still 17 years of age on the date of the hearing], and the other facts and circumstances that have been testified to, that a substantial amount of child support that should have been paid by Mr. Shelhamer was forgiven and that Ms. Altermatt was required to pay a number of debts as a result of the fact that he declared bankruptcy [Father admitted that he declared bankruptcy and Mother's testimony that she paid those bills is not contradicted in the record.

The Court agrees that this is a case in which there should be a deviation from the guidelines, and the Court accordingly is going to order a deviation downward to the amount of $50 per month retroactive to December 10, 2004. Any child support that she owes from December 10, 2004, at $50 per month would be set off against any support that Mr. Shelhamer continues to owe as a result of the previous order in the case up to that date.

The Court will further find that considering the age of the child, the fact that he is, as apparently testified to and undisputed, a 19–year–old freshman [in high school], that the Court cannot order that support go on indefinitely with an expectation that he's going to remain a high school student on an indefinite basis. It is going to be necessary to take a close look at the possibility of having him complete a GED or go into the Job Corps, one of those alternative-type plans.

Accordingly, the Court is going to—to go on the basis that with proper tutoring he most likely would be able to complete a GED, even at the IQ that he has, by the end of summer of 2005. So the child support obligation is not going to continue beyond August 31, 2005.

[¶ 14] The circumstances of James' high school education and work experience are found in these excerpts from Mother's testimony at the hearing:

MRS. ALTERMATT: Number two, James is 17 years old and pays his own bills. He is employed by the Forshee Ranch in Hyattville. When he lived with me, he worked for Carl Jones. He makes his own vehicle payment, and he pays his own vehicle insurance. At least he did when he lived with me.

. . . .

Well, his dad had him start as a freshman [in high school]. He's always been behind in school, Your Honor. And when we moved to Powell, he had a really rough year, and so he—I took him out, and he was doing correspondence courses, working for Carl Jones and then doing correspondence course. He would go to work with me. But they didn't recognize that, I guess, when he started school in Basin, and he's a 17–year–old freshman.

THE COURT: Have you and Mr. Shelhamer discussed whether he's going to remain in school to get a high school diploma or attempt to get a GED?

MS. ALTERMATT: My plan for him—to answer the question, yes, we have discussed it. My plan for him was to get a GED, and he was training with a mechanic in Lovell, to be like a mechanic's—a mechanic eventually. And he was more on a vocational track. I explained that here.

School's always been hard for James. When he first started, they did testing on him, and his IQ was tested at 79. And we were able to get him through school until high school, and then it just became too difficult.

. . . .

MRS. ALTERMATT: Well, just regarding James, his dad did not agree with my

educational plan, but I felt it was working out well for him. He would have—we also talked about Job Corps, where he could either get a high school diploma or a GED, either one, and they would train him. With an IQ of 79, I think vocational track is appropriate for him. And I was going to get him through. He would have either had a high school diploma or a GED by the time he was 18 if he would have stayed in my household. But as it is now, I don't know. I don't know.

. . . .

MRS. ALTERMATT: Well, he was being tutored for GED, and I had him tested as well, and he was middle eighth grade. But that's—if he would have stayed in the resource room where they started him in school, he would have been lucky to even obtain seventh-grade level. But he was being—adult education is in with my office in Lovell, and he was being tutored for his GED, and they would have just made—they would have kept working with him until he got it.

## STANDARD OF REVIEW

[¶ 15] Our role in reviewing petitions to modify child support is well established:

There are few rules more firmly established in our jurisprudence than the proposition that disposition of marital property, calculation of income for child support purposes, and the granting of alimony are committed to the sound discretion of the district court. *Johnson v. Johnson*, 11 P.3d 948, 950 (Wyo.2000). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.; Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). We must ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Johnson*, 11 P.3d at 950. In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Id. Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, ¶ 6 (Wyo.2001).

The party seeking modification must establish there has been a material and substantial change in circumstances which outweighs the interest of society in applying the doctrine of res judicata. *Pauling v. Pauling*, 837 P.2d 1073 (Wyo. 1992); *Crawford v. Crawford*, 828 P.2d 1192 (Wyo.1992); *Dorr v. Newman*, 785 P.2d 1172 (Wyo.1990); *Mentock v. Mentock*, 638 P.2d 156 (Wyo.1981). The trial court is vested with discretion to modify the provisions of the divorce decree and, absent a grave abuse of that discretion, we will not disturb its decision. *Parry v. Parry*, 766 P.2d 1168 (Wyo.1989); *Manners v. Manners*, 706 P.2d 671 (Wyo.1985). The standard we apply in review of cases asserting abuse of discretion as an issue is whether the trial court reasonably could have concluded as it did. *Rude v. State*, 851 P.2d 20 (Wyo.1993), and *Parry* (both citing *Martinez v. State*, 611 P.2d 831 (Wyo.1980)). *Pasenelli v. Pasenelli*, 2002 WY 159, ¶ 9, 57 P.3d 324, ¶ 9 (Wyo.2002) (quoting *Jones v. Jones*, 858 P.2d 289, 291 (Wyo.1993)). This policy manifests a balance between the doctrine of finality of judgments which is supported by the doctrine of res judicata and the statutes providing for modification of the provisions of a decree relating to child custody, support, and alimony. The trial court is charged with resolving that tension, and it must do so in the exercise of discretion. The discretion afforded the trial judge is encompassed in Wyo. Stat. § 20–6–302(b). The discretion is guided by a list of thirteen factors, but the final one, "[o]ther factors deemed relevant by the court * * *," is a classic acknowledgment of judicial discretion.

The child support guidelines identify a base from which the judge must invoke the exercise of discretion. In the absence of an agreement with respect to child support, the guidelines will have a

more significant controlling impact. When an agreement as to child support is involved, however, more weight may be given to the agreement. Child support agreements entered into by the parties are favored by the courts. *Beard v. Beard*, 368 P.2d 953 (Wyo. 1962).

*Smith v. Smith*, 895 P.2d 37, 41 (Wyo. 1995).

*Ready v. Ready*, 2003 WY 121, ¶ 11, 76 P.3d 836, 838–39 (Wyo.2003); and see *Steele v. Steele*, 2005 WY 33, ¶¶ 10–16, 108 P.3d 844, 848–51 (Wyo.2005); Wyo. Stat. Ann § 20–2–307 (LexisNexis 2005).

## DISCUSSION

### Support Beyond Age 18

[¶ 16] Wyo. Stat. Ann. § 20–2–313 (LexisNexis 2005) provides:

§ 20–2–313. **Cessation of child support.**

(a) An on-going child support obligation terminates when the:

(i) Parents marry or remarry each other;

(ii) Child dies;

(iii) Child is legally emancipated; or

(iv) Child attains the age of majority.

(b) After the remarriage of the parents to each other, the court may eliminate all child support arrearage existing between the parents except those assigned to the state of Wyoming.

[¶ 17] Wyo. Stat. Ann. § 14–2–204(a)(iii) (LexisNexis 2005) (emphasis added) provides:

(a) Any person legally responsible for the support of a child who abandons, deserts, neglects or unjustifiably fails to support the child is liable for support of the child. It is no defense that the child was not or is not in destitute circumstances. For purposes of this section, **a parent's legal obligation for the support of his or her children, whether natural or adopted, continues past the age of majority in cases where the children are:**

(i) Mentally or physically disabled and thereby incapable of self support; or

(ii) Repealed by Laws 2000, ch. 1, § 2.

(iii) **Between the age of majority and twenty (20) years and attending high school or an equivalent program as full-time participants.**

[¶ 18] With respect to this issue, the original, stipulated Decree of Divorce provided: "Such support shall continue until each child ... becomes self-supporting, marries or becomes 18 years of age, whichever event shall first occur."

[¶ 19] There is no indication in the record that the parties were aware of their son's learning disability at the time that the decree was agreed to and entered. Although, as we have noted above, agreements with respect to child support are favored, we have also held that "[a] child's right to adequate support cannot be bargained away by a contract between the parents regardless of the validity of the agreement between the parents themselves." *Kimble v. Ellis*, 2004 WY 161, ¶ 8, 101 P.3d 950, 953 (Wyo.2004).

[¶ 20] For more than a decade, these parties were able to resolve their differences by stipulation, but were unable to do so in this case. It appears from the record extant that the stipulations were largely driven by Father's needs and Mother's acquiescence. In this instance it appears that Father was unable to find common ground with his former wife. Our conclusion is driven in large part by the precise circumstances presented in this case, and we hold that the parties' original agreement that child support should terminate when James reached the age of 18 (i.e., on October 17, 2005) should govern here. The district court chose to terminate child support as of August 31, 2005. The termination date set by the district court is erroneous. However, because the error is *de minimus*, we will affirm the district court's order as entered. See *Parkhurst v. Boykin*, 2004 WY 90, ¶ 26, 94 P.3d 450, 462 (Wyo. 2004); W.R.A.P. 9.04.[2]

---

**2.** W.R.A.P. 9.04 provides:

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court.

## Failure to State Amount of Presumptive Support in Decree

[¶ 21] In cases too numerous to mention here, we have stressed the importance of the district court making detailed findings in matters such as the one before us today. Of course, it was irresponsible of the district court to assign the task of preparing the order in this case to a party who was appearing before the court pro se. Furthermore, it was irresponsible for the district court to sign a judgment that did not contain the information that is required by the governing statute. In its oral findings, the district court did state what the presumptive support would have been had the district court chosen to adhere to the presumptive support tables. However, that information was not memorialized in the order from which this appeal was taken. There is an inherent tension between statutes such as those at issue here (cases where the "best interests of the child" are at stake and/or where a statute specifically calls for findings to be in an order or decree) and the provisions of W.R.C.P. 52[3] and 58.[4] However, it

3. W.R.C.P. 52 provides:

(a) *General and special findings by court.*—Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its conclusions of law; provided, that without such request the court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, the same may be considered on appeal. Requests for findings are not necessary for purposes of review. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in subdivision (c) of this rule.

(b) *Amendment or additional findings.*—On a party's motion filed no later than 10 days after entry of judgment; the court may amend special findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59. When special findings of fact are made in actions tried without a jury, the sufficiency of the evidence supporting the findings may be later questioned whether or not in the court the party raising the question objected to the findings, moved to amend them, or moved for partial findings.

(c) *Judgment on partial findings.*—If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. The party against whom entry of such a judgment is considered shall be entitled to no special inference as a consequence of such consideration, and the court may weigh the evidence and resolve conflicts. Such a judgment shall be supported by findings as provided in subdivision (a) of this rule.

4. W.R.C.P. 58 provides:

(a) *Presentation.*—Subject to the provisions of Rule 55(b) and unless otherwise ordered by the court, written judgments or orders shall be presented to the court within 20 days after its decision is made known. Before submitting the judgment or order, the party drafting it shall seek to secure the written approval as to form of the other parties. If, within 10 days, approval as to form is not obtained, the party drafting the form of judgment or order may forward the original to the court and serve a copy on the other parties with a notice advising objections must be made within 10 days. If no written objection is timely filed, the court may sign the judgment or order. If objection is filed, the court will resolve the matter with or without a hearing. A party objecting shall submit an alternative form of judgment or order with the objection.

(b) *Form and entry.*—Subject to the provisions of Rule 54(b), in all cases, the judge shall promptly settle or approve the form of the judgment or order and direct that it be entered by the clerk. Every judgment shall be set forth on a separate document, shall be identified as such, and may include findings of fact and conclusions of law. The names of all parties shall be set out in the caption of all final orders, judgments and decrees. All judgments and orders must be entered on the journal of the court and specify clearly the relief granted or order made in the action.

(c) *Time of entry.*—A judgment or final order shall be deemed to be entered whenever a form of such judgment or final order, signed by the trial judge, is filed in the office of the clerk of the court in which the case is pending. Entry of the judgment shall not be delayed, nor the time for appeal extended, in order to tax costs or award fees, except that, when a timely motion for attorney's fees is made under Rule 54(d)(2), the court, before the appellate court acquires jurisdiction, may order that the motion have the same effect

is incumbent upon the district court in any case, but especially in a case where the parties are appearing before it in child custody and/or child support matters, to ensure that the order contains all required findings. Here, the record contains a statement of the presumptive support level which we quoted above. Therefore, we conclude that this error too is *de minimus* and, hence, harmless.

## Deviation from Presumptive Support Level

 [¶ 22] The district court made a decision to deviate from presumptive support in this instance. It based that decision on the age of the child (§ 20–2–307(b)(i)); the value of services contributed by either parent (§ 20–2–307(b)(v)); and, other factors deemed relevant by the court (§ 20–2–307(b)(xiii)). The factor specifically pointed to by the court in the order was Mother's forgiveness of child support arrearages owed to Mother by Father, but as we noted above in our quotation of the district court's oral findings, there were several other such factors that the district court took into account. In its oral findings, the district court made a specific finding that application of the presumptive support guidelines would be unjust and inappropriate in this particular case. Our decision in *Steele* was available to the district court at the time the order, which is the subject of this appeal, was entered (it was published just one month before the date of that order), although there is no indication in the record on appeal that it was called to the attention of the district court by the parties. In the light of all of these circumstances, we conclude that, although the proceedings in this case are no model for either litigants or for district courts, the district court did not abuse its discretion in taking into account the facts and circumstances that it did, or in making its decision to deviate from the presumptive support level. All errors were *de minimus* and harmless.

## CONCLUSION

[¶ 23] The proceedings in this case were inexcusably unconventional. While we have repeatedly held that the settlement of cases is favored by the courts in virtually all circumstances, when the issues relate to the custody of children and their support and welfare, a trial court must often forgo informality in favor of careful attention to the governing statutes and the standards that the legislature expects both parties and the courts to adhere to in such cases. To do otherwise needlessly complicates and delays the final resolution of these important cases. Clearly, there were errors and lapses of judgment that crept into these proceedings, and in some respects it was a decade's worth of cumulative errors that finally came to bear on the final months of this family's experience with divorce, child custody, and child support. We are confident that neither courts nor litigants will look to the unique (or so we hope) circumstances of this case as a precedent for much of anything other than that such muddling only leads to ever greater complications. However, in the final analysis we conclude that the errors that crept into this case were both *de minimus* and harmless, and we hold that the district court's order should be affirmed.

2006 WY 86N

on the time for appeal for all parties as a timely motion under Rule 59.